RICHARD L. MILLS v. ISAAC B. TRAVER.

[FILED SEPTEMBER 28, 1892.]

1. **Ejectment:** PLEADING: DESCRIPTION OF LAND. In an action of ejectment to recover certain real estate which the petition described by metes and bounds, commencing at the southeast corner of the northwest quarter of the northwest quarter of a specified section, town, and range, a motion to make the petition more definite and certain, by requiring the plaintiff to set forth therein by some definite landmark or survey where said corner is situated, was *held* properly overruled.

2. ———: ADVERSE POSSESSION: PUBLIC LAND: HOMESTEAD: WHEN STATUTE BEGINS TO RUN. A party acquired title to public lands under the United States homestead law, to a portion of which another person claims title by adverse possession, *held*, that the statute of limitations did not begin to run against the party entering the land in favor of the one holding adversely, until the right to the patent was completed by the per-

formance of every act required of the entryman by the homestead law.

3. **The evidence**, although conflicting, is sufficient to sustain the finding that the possession of the defendant of the land in question had not been adverse and exclusive for the period of ten years before the commencement of the suit.

ERROR to the district court for Merrick county. Tried below before POST, J.

*A. Ewing*, and *Lee & Thompson*, for plaintiff in error.

*John Patterson*, and *Webster & White, contra.*

NORVAL, J.

On the 1st day of August, 1888, defendant in error commenced an action in the district court of Merrick county to recover the possession of the strip of land described in his petition by metes and bounds. The plaintiff in error filed a motion to make the petition more definite and certain, which was overruled by the court, and an exception to the ruling was entered upon the record. Afterwards an answer was filed, denying that defendant in error is the owner of the land in controversy, or is entitled to the possession thereof, and alleging that plaintiff in error has been in the open, notorious, exclusive, adverse, and uninterrupted possession of said strip of land, as owner, for more than ten years prior to the bringing of the suit. The reply is a general denial. There was a trial to a jury, with verdict and judgment for defendant in error. The jury also made special findings as follows:

"Question 1. Of the two surveys referred to by the witnesses, to-wit, that made by McLean in the year 1869, and that made by Patterson in the year 1888, which one, if either, do you find was correct, and which survey, if either, fixed and established the true dividing line between the premises of the plaintiff and defendant? Answer. The Patterson survey.        I. H. CASTLE, *Foreman.*

"Question 2. Had the defendant been in the actual, adverse, exclusive, and uninterrupted possession of any part of the premises in controversy for the period of ten years previous to the commencement of this action, to-wit, August 1, 1888? If so, state what part thereof. Answer. No.                        I. H. CASTLE, *Foreman.*"

Complaint is made in the brief of counsel for plaintiff in error of the overruling of the motion to make the petition more definite and certain, by "requiring the defendant in error to set forth therein by some definite landmark or survey where the southeast corner of the northwest quarter of the northwest quarter of section 6, township 13 north, of range 5 west, in Merrick county, is situated." Said corner is the point mentioned in the petition where the pleader starts to bound the tract therein described, and which is in litigation herein. The petition does not allege how said corner is marked, whether by a visible mound, stake or stone, nor was such an allegation necessary to enable a person to locate the land in controversy. The motion was properly overruled.

No complaint is now made of the rulings of the court below on the trial, or of the instructions given and refused. But it is insisted that the verdict of the jury is not sustained by the evidence, which objection we will now consider.

The parties own adjoining lands. The plaintiff in error is the owner of the southwest quarter of the northeast quarter and the southeast quarter of the northwest quarter of section 6 of township 12, range 5, in Merrick county, and also lots 7 and 8 of said section. Defendant in error owns the west half of the northwest quarter and the west half of the southwest quarter of said section 6. The controversy is as to the location of the true line dividing their lands, each party claiming that the strip in dispute is within the boundary lines of his land.

It appears in evidence that plaintiff in error entered all

of his land, with the exception of lots 7 and 8, under the provisions of the United States homestead law, in 1868. For the purposes of locating the corners of his homestead, he had the same surveyed in 1869 by one John McLean, the county surveyor of the county.    Defendant in error entered the said west half of the northwest quarter under the timber culture acts of congress on September 22, 1873, and acquired title thereto by virtue of a patent issued to him on March 20, 1886.    To the west half of the southwest quarter he acquired title by purchase.    In 1888, M. Patterson, the acting county surveyor of the county, at the request of Mr. Traver, surveyed the said lands of plaintiff and defendant and located the line dividing their premises, which line is some eighty links east of the one surveyed by Mr. McLean in 1869.    The question is, which survey was correct?  If the Patterson survey truly located the line dividing the premises of the parties, then the strip of land in controversy is embraced within the boundary of the lands owned by defendant in error; otherwise not.    Whether said survey is accurate and correct depends entirely upon whether the point where Mr. Patterson started to run his lines was the true northwest corner of section 6, as established by the government surveyor.    That the place where Mr. Patterson started his survey was the true governmental corner was testified to by defendant in error and several of his witnesses, while the testimony of plaintiff in error and his witness is to the effect that the northwest corner of said section 6 is twenty-two feet west of the place where the Patterson survey commenced.    It is impossible to reconcile the testimony of the witnesses.    The evidence bearing upon the question was submitted to the jury under proper instructions and they found that the Patterson survey was correct, and located the line dividing the premises of the parties.    The finding, being sustained by the evidence, will not be molested.

One question remains to be considered.    Has plaintiff in

error acquired title by adverse possession? As to that part of the strip in dispute lying north of the quarter section line and west of Mills's homestead, there is evidence tending to show that for ten years prior to the bringing of the suit Mr. Mills had plowed and planted to crops up to within a distance of a few feet of the line located by the McLean survey, which plaintiff in error says he left for a private way to the section line road. Conceding that he was in the exclusive possession thereof as owner for the statutory period, yet he did not acquire title thereto by such possession, for the reason the same was a part of Traver's timber claim and he had not complied with the law so as to entitle him to a patent for the land until 1885, or about three years before suit was commenced. The statute of limitations did not commence to run against defendant in error until his right to the patent was complete. (*Carroll v. Patrick*, 23 Neb., 847; *Gibson v. Chouteau*, 13 Wall. [U. S.], 92; *Sparks v. Pierce*, 115 U. S., 408; *Simmons v. Ogle*, 105 Id., 550; *Nichols v. Council*, 9 S. W. Rep. [Ark.], 305; *Steele v. Boley*, 22 Pac. Rep. [Utah.] 311.)

As to the remainder of the strip which lies south of the quarter section line and west of said lots 7 and 8, there is a sharp conflict in the testimony bearing upon the question of Mills's possession of the same. The above mentioned lots were taken by him as a timber claim in the fall of 1877. The testimony introduced by plaintiff in error tends to show that prior to said year a few furrows had been plowed on the strip in controversy by a prior occupant of said lots 7 and 8; that in the spring of 1878 Mr. Mills planted a row of forest trees along the east side of said strip on said plowing, about twelve feet apart; that subsequently he planted other trees between them, which are now standing and growing, and that during a portion of the time since 1878 plaintiff in error has cultivated and farmed said plowed strip of ground. The testimony on the part of the defendant in error is to the effect that the

trees were not planted by Mr. Mills until the spring of 1879, and that afterwards, and prior to the commencement of this action, one John Good, a tenant of Traver's, with the knowledge of Mr. Mills, and without any protest or objection upon his part, harvested the hay for two years on said strip west of the row of trees. This was admitted by Mr. Mills upon the witness stand. The first act of possession of plaintiff in error was the planting of the trees already mentioned, and if they were not put out until the year 1879, as some of the witnesses testify, and the jury must have so found, then it is clear that he has not been in possession of said strip of land for ten years prior to the bringing of this suit. But even though the trees were planted in 1878, still plaintiff in error's possession has not been exclusive and uninterrupted for the statutory period, for the reason that the continuity of his possession had been broken. The verdict of the jury is sustained by the evidence, and the judgment is

AFFIRMED.

MAXWELL, CH. J., concurs.

POST, J., took no part in the decision.