[No. 3972.]

## THE DENVER AND RIO GRANDE RAILROAD COMPANY V. WILSON.

1. PUBLIC LANDS—RAILROADS—RIGHT OF WAY—PREEMPTION RIGHTS OF SETTLER.

   The act of congress of March 3, 1875 (18 U. S. Stats. at Large pages 482-3) granting to railroad companies right of way through the public lands, is not in the nature of an absolute grant *in præsenti* but is rather an offer to all railroad companies and takes effect as a grant to any particular company, only, when such company has complied with the provisions thereof by the location of its road and by filing with the register a profile thereof. And where a settler has secured a possessory right to any part of the public domain by entering thereon and filing a preemption declaratory statement before a railroad company locates its road and files a profile thereof, the rights of the settler are superior to those of the railroad company and such company can only establish its right of way across such land by condemning the possessory right of the settler.

2. PUBLIC LAND—LIMITATION.

   As between rival individual claimants of land acquired from the United States government, the statute of limitation does not begin to run in favor of an adverse claimant in possession as against an entryman until the latter by a full compliance with the law becomes entitled to a patent.

3. PUBLIC LANDS—RAILROADS—RIGHT OF WAY—PREEMPTION SETTLER—ESTOPPEL.

Where a preemption settler upon public land notified a railroad company of his claim and protested against the company entering upon his land and building its road across the same unless compensation be given him, but the company notwithstanding such protest proceeded to take possession of and build its road on a strip of land across the preemptor's claim, the fact that such settler took no further action to protect his possession against the encroachments of the company until after he had acquired a patent would not estop him from bringing an action in the nature of ejectment against the railroad company to recover possession of the land appropriated, after the patent was issued and within the time prescribed by the statute of limitation.

4.  SAME—DAMAGE—APPELLATE PRACTICE—REMITTITUR.

In an action by a preemption claimant against a railroad company for possession of land appropriated by the company for its track and for damage, where the court instructed the jury that they should assess only nominal damage for the ouster but the jury in addition to damage for rental value and detention found for plaintiff $2,000 damage for the ouster, and there is nothing in the abstract to sustain the finding, the damage for ouster will be set aside, but where the balance of the judgment is correct the judgment will not be reversed provided plaintiff enters a remittitur for the damage, but will be modified and affirmed.

5.  RAILROADS—RIGHT OF WAY—STAY OF JUDGMENT—CONDEMNATION.

Where a land owner recovered judgment for possession of land appropriated by a railroad company for its right of way together with damages for rent and costs, that part of the judgment for possession may be stayed a reasonable time to permit the defendant to proceed to condemn the land for right of way.

*Appeal from the District Court of Garfield County.*

Mr. H. T. SALE for appellant.

Mr. GEORGE L. HODGES, Mr. J. W. DOLLISON and Mr. WILL V. HODGES for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

This action, in the nature of ejectment, designated by our code an action for the recovery of the possession of real prop-

erty, was brought by Wilson, the appellee, against the appellant railroad company to recover a strip of ground on which it had built its line of road. The facts are that in June, 1885, the plaintiff, a competent person, entered upon the quarter section of land, of which the strip in question is part, with the intention to acquire title under the preemption laws of the United States, and upon the 20th of that month filed his declaratory statement, and thereafter complied with the conditions prescribed in that law for the acquisition of title, and on July 15, 1896, a patent for the land was issued to him in which no reservations or exceptions appear.

In July, 1887, while the land was in the actual occupancy of one Bennet, between whom and the plaintiff there was a contest pending in the land office as to which had the better right to preempt this quarter section, the defendant, after complying with the act of 1875, hereinafter set out, procured from Bennet a conveyance of the right of way in question, entered into possession, and built its road thereon. Before that time, in an action between Bennet and the plaintiff as to the right of possession pending the determination of the controversy in the land office, the district court of Garfield county decided in favor of Bennet. The plaintiff, notwithstanding this decision of the state court, followed up his proceedings in the land office, which ultimately resulted in his securing a patent. At and before the time the railroad company got its deed of conveyance from Bennet, it was notified by plaintiff of his claim upon the premises, and to its entry thereupon the plaintiff objected unless compensation therefor was given. Soon after he received his patent plaintiff brought this action.

The defendant does not rely upon the deed from Bennet. Its contention now is: *First*, that under the act of Congress of March 3, 1875 (18 U. S. Stats. at Large, pp. 482, 483) the right of way for its railroad was granted to it over any of

the public lands not then disposed of, and that this tract was not disposed of when it entered upon it; that such easement is of equal dignity with the legal title of plaintiff, who holds the legal estate with the burden of the easement; that since it made full compliance with the provisions of that act before plainfiff's rights attached to his pre-emption, its right of way attaches as of the date of the passing of the act, or at least before plaintiff's rights became vested under his patent. *Second*, that if such be not the case, plaintiff is barred by the statutes of limitation from maintaining this action; and, *third*, plaintiff, by laches and acquiescence in the acts of the company, is estopped to maintain it; and if in these three particulars there is no merit, then, *fourth*, that the verdict of the jury in awarding the plaintiff damages for the ouster contrary to the evidence and instructions of the court is, of itself, sufficient to work a reversal of the judgment.

The contention of the plaintiff is that he holds the patent from the United States government conveying the entire quarter section without any reservation or qualification whatever; and that, under the plain provisions of the act of congress, his rights had attached more than two years before the entry upon the land by the defendant; therefore, within the meaning of the act, the land was disposed of before defendant was in a position to institute, or acquire, an easement thereover; that neither the statute of limitation, nor laches, applies, and that the verdict was warranted.

The language of tne first section of the act is:

"That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized  *  *  * which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road.  *  *  *"

Section 2 is not pertinent to the present controversy.   Sec-

tion 3 authorizes the legislature of the proper territory to provide for the manner in which private lands and possessory claims on the public lands of the United States may be condemned. Section 4 reads:

"That any railroad company desiring to secure the benefits of this act shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and. if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way."

To the consideration of the questions raised we proceed in the order followed by counsel in their briefs.

1. Defendant argues that the same construction belongs to this statute as that put upon the divers railroad land grant acts of congress by the supreme court of the United States in *Frisbie v Whitney*, 9 Wall. 187; *The Yosemite Valley Case*, 15 Wall. 77; *Van Wyck v. Knevals*, 106 U. S. 360; *Railroad Co. v. Baldwin*, 103 U. S. 426, and many similar cases. In considering each of these acts it was held that the grant therein contained was one *in præsenti;* that it purported to pass a present title to the lands and right of way, and that one seeking, under the general land laws, to acquire any portion of the public lands after the passage of the act, took subject to the right of the railroad company provided it observed the statutory conditions, and that upon performance by it of the conditions prescribed by the act, its rights thereunder attached, under the doctrine of relation, as of the date when the act took effect.

The only case to which our attention has been called in which the supreme court of the United States had occasion

to construe the act in question is *Washington & Idaho R. R. v. Osborn*, 160 U. S. 103. The question with which we are confronted was, in principle, there involved. The railroad company claimed a right of way over land occupied by a settler without rendering compensation. He made settlement on unsurveyed land of the United States after the act of 1875 was passed with the intention thereafter to obtain title under the pre-emption laws of the United States. Before he perfected nis title, the railroad company, having complied with the conditions prescribed for it by the act, attempted to locate its road over his lands. The court remarked that: "It would not be easy to suppose that congress would, in authorizing railroad companies to traverse the public lands, intend thereby to give them a right to run the lines of their roads at pleasure, regardless of the rights of settlers." On the contrary, as that learned court held, in the third section of the act there was an express provision saving the rights of settlers in possession.

It necessarily follows from this ruling that under this act re ight of way is not in the nature of a grant *in præsenti* Indeed, it was expressly decided that a settler, who had only an inchoate right, in actual occupancy (as plaintiff here unquestionably was) must be compensated if the line of road is built across his claim. The supreme courts of several of the states have come to the same conclusion. *Red River, etc., R. R. Co. v. Sture*, 32 Minn. 95; *Larsen v. O. R. & N. Co.*, 19 Ore. 240; *C. K. & N. R. R. Co. v. VanCleave*, 52 Kan. 665; *Enoch v. Spokane Falls, etc., R. R. Co.*, 6 Wash. 393; *Reidt v. Spokane Falls, etc., R. R. Co.*, 6 Wash. 623; *Kinion v. K. C., Fort Scott & M. R.R. Co.*, 118 Mo. 577; *Jamestown & Northern R. R. Co. v. Jones*, 7 N. Dak. 619.

In *Red River, etc., R. R. Co. v. Sture, supra*, the court said:

"This act of March 3, 1875, is in the nature of a grant or offer to any and all railroad companies which may see fit to

accept its terms and avail themselves of its benefits. It prescribes the terms or conditions upon which any company desiring to secure its benefits may do so. The fourth section requires it, within a certain time, to file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the secretary of the interior, that it shall be noted on the plats in the land office; 'and *thereafter* all such lands over which such right of way shall pass shall be disposed of subject to such right of way.' This is not in the nature of an absolute grant *in præsenti* to a designated company, as in the case of *Railroad Co. v. Baldwin*, 103 U. S. 426. * * * This act is in the nature of a general offer to the public, which takes effect and becomes operative as a grant to a particular company only when it accepts its terms by a compliance with the conditions precedent prescribed in the act itself. * * * This is clearly the theory on which the act is framed. It merely offers or proposes to give any railroad company, upon compliance with its terms, the right of way over public lands to which private rights have not attached at or before the date of such compliance. This is clearly implied in the third section, which provides for the manner in which possessory claims on the public lands may be condemned, and in the fourth section, which provides that *thereafter* (*i. e.*, after the company has complied with the provisions of the act) all such lands over which such right of way shall pass shall be disposed of subject to such right of way."

In *Jamestown & Northern R. R. Co. v. Jones, supra,* Corliss, C. J., in an able opinion, *inter alia,* says:

"The implication that only after the approval of the profile of the road should land be disposed of subject to the right of way applies to every conceivable case which can arise under the act. * * * We believe that lands are disposed of, within the meaning of this section, whenever a pre-emption settlement thereon has been made. It is clear,

from section 3, that the act contemplates that a settler who has only possessory rights shall be protected as much as one who has made final proof.  *  *  *  Sections 3 and 4 treat such settler who has made his settlement prior to the approval of the profile of the road (which is nothing more than a map of definite location) as possessing superior rights, which must be considered by the railroad company, the same as any other private property. It is obvious that lands are disposed of. within the meaning of section 4, whenever a person has secured thereon such a possessory right as the railroad company is required to condemn under section 3."

On application for a rehearing, the court in that case, if possible with still greater clearness, thus states its position:

"But the implication found in section 4, that the settler takes subject to the right of way only when his rights attach after the map of definite location has been filed and approved, when considered in the light of the provisions of section 3, which clearly show that mere possessory rights must be condemned by the railroad company, plainly point to only one conclusion, in our judgment; *i. e.*, that when a settler has taken possession of land, with a view to making a pre-emption filing thereon, before the map of definite location of a railroad right of way thereover has been filed and approved, the railroad company must condemn the possessory right of the pre-emptor."

The facts of the case at bar showing that plaintiff made his entry and filed his declaratory statement before the railroad company located its road and filed a profile thereof, and before the approval of the latter by the secretary of the interior, and that, by subsequent compliance with the pre-emption law, he secured a patent, bring it within the principle of the foreging cases. We hold that, within the meaning of the act, plaintiff's rights attached to the land in controversy before defendant took any steps to secure its benefits; hence plaintiff's land is free from the burden of its alleged ease-

ment. In other words, the land over which defendant claims its right of way was *disposed of* before defendant was in a position to assert any claim to the right of way.

2. The authorities are that, as between rival individual claimants of land acquired from the United States government, the statute of limitation does not begin to run in favor of an adverse claimant in possession, as against an entryman, until the latter, by a full compliance with the law, becomes entitled to a patent. This disposes of the plea of the bar of our statute, for the action was instituted within the period therein limited. *Kennedy v. Townsley,* 16 Ala. 239; *Mills v. Traver,* 35 Neb. 292; *Gibson v. Chouteau,* 13 Wall. 92; *Overton v. Davisson,* 42 Am. Dec. 544; *Stephens v. Moore,* 116 Ala. 397.

3. There is no element of estoppel in the case, even if such defense had been pleaded, which we do not find in the answer. The fact is that plaintiff did all that any prudent and reasonable man was required to do when defendant entered upon the land and built its road. He protested against such acts unless compensation was given him. While, under our statute, he might, before patent issued, protect his occupancy against encroachments by defendant, which he unsuccessfully attempted against its grantor Bennet, yet his failure to do so does not bar an action for that purpose instituted after the patent was issued and within the period prescribed by the limitation act. Indeed, it is questionable if he had not exhausted his legal remedy under our statute against Bennet and his grantee until after the land department decided in his favor. However that may be, his right to maintain the present action is clear.

4. The court instructed the jury that, if they found in favor of plaintiff, they should assess only nominal damages for the ouster. The abstract of record is not complete, and we are not called upon to resort to the transcript. There is nothing in the abstract which will sustain the finding of the

jury for $2,000 damages for the ouster; and notwithstanding the court declined to set aside the verdict upon a motion for a new trial which, among other things, alleged as error such finding, still we cannot permit it to stand. There is no necessity, however, for reversing the judgment upon this ground, as the plaintiff offers to remit the whole, or such part, of the damages as to this court seems proper, rather than to have the case remanded for trial upon the question of damages alone.

If within ten days plaintiff files in this court a written consent to remit the damages awarded for the ouster except the sum of one dollar, the judgment, as thus modified, will be affirmed. Execution thereof will be suspended,—except as to costs, and also except as to that part of the judgment which awarded plaintiff the sum of five hundred dollars for damages for rental value and retention of the property,—for the period of thirty days, in order that defendant company, if it be so advised, may institute proceedings in the proper jurisdiction under the eminent domain act to acquire the right of way in question. If within that time such proceedings be not brought, plaintiff may proceed to enforce this judgment, as modified, and have his writ of possession; but if such proceedings be brought and prosecuted by defendant to a termination, and it responds to whatever judgment may be awarded therein, execution of the judgment in this action for possession shall be permanently enjoined. Appellee, in any event, shall recover his costs herein incurred both here and in the district court, and also the five hundred dollars allowed by the jury for rental value and retention, and execution therefor shall not be stayed, but shall issue out of the district court on his request.

*Modified and Affirmed*