KIOWA CREEK LAND & CATTLE CO., INC., APPELLANT, V.
SUREN GEORGE NAZARIAN, JR., AND ELLEN YVONNE
NAZARIAN, AS COTRUSTEES OF THE 12/20 TRUST DATED
AUGUST 24, 1993, APPELLEES.

554 N.W.2d 175

Filed September 17, 1996.   No. A-95-933.

John F. Simmons, of Simmons, Olsen, Ediger & Selzer, P.C.,
for appellant.

Roy Hahn, of Hahn Law Office, P.C., for appellees.

HANNON, SIEVERS, and MUES, Judges.

HANNON, Judge.

Kiowa Creek Land & Cattle Co., Inc. (Kiowa), filed this
declaratory judgment action to obtain a declaration that it held
an easement of access across a section of land that was formerly
school land but which had been purchased by the cotrustees of
the 12/20 Trust, Suren George Nazarian, Jr., and Ellen Yvonne
Nazarian. The Nazarians purchased the school section from the
Nebraska Board of Educational Lands and Funds (NBEL&F)
by a quitclaim deed dated September 24, 1990, and this action

was commenced on March 30, 1994. The district court granted the Nazarians a summary judgment of dismissal on the grounds that the land had been owned by the State of Nebraska until it deeded the land to the Nazarians less than 10 years before, and therefore, since the statute of limitations does not run against the state and the land had been in private ownership for less than 10 years, Kiowa could not have acquired rights by prescription regardless of the use it might have made of an access way across the land. We agree and affirm the trial court's judgment.

The Nazarians had rented the school land from the NBEL&F from January 1, 1982, until they purchased it. Kiowa owned land to the west of the Nazarians' land, and for purposes of this opinion we will assume that Kiowa traveled across the school land for such time and in such a manner as to establish an easement by prescription if the state had not been the owner of the school land until 1990.

Kiowa alleges that the district court erred in granting the Nazarians a summary judgment. The questions raised by this appeal are questions of law, and when reviewing questions of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Nelson v. Metropolitan Utilities Dist.*, 249 Neb. 956, 547 N.W.2d 133 (1996); *Whitten v. Malcolm*, 249 Neb. 48, 541 N.W.2d 45 (1995); *Eggers v. Rittscher*, 247 Neb. 648, 529 N.W.2d 741 (1995).

The trial court and the Nazarians rely principally upon the case *Topping v. Cohn*, 71 Neb. 559, 99 N.W. 372 (1904). In that case, two lots of school land to which accretion land attached itself as a river slowly changed its course were sold to the defendant in 1901. The *Topping* court concluded that the land in question accreted to the school land while it was owned by the State and stated: "That no title by adverse possession can be acquired against the state or general government is elementary. Land can not be the subject of adverse possession while the title is in the state." *Id.* at 562, 99 N.W. at 373.

In both *Kimes v. Libby*, 87 Neb. 113, 126 N.W. 869 (1910), and *Mills v. Trever*, 35 Neb. 292, 53 N.W. 67 (1892), a landowner against whom a claim of title by adverse possession

was asserted received his patent to his land less than 10 years before the relevant date, but the claimant dated his adverse use to a time before the landowner received the patent. Both cases held that the statute of limitations did not begin to run while the government owned the land. If these cases involved a claim for a prescriptive easement by adverse possession rather than a claim to ownership of a portion of a tract, they would be on point and controlling. Thus, the only question in this case is whether the above principles apply to a case involving a claim of a prescriptive easement.

The general rule is: "While there is authority apparently to the contrary, it is generally held an easement cannot be acquired, in real property, by prescription against a state, its subdivisions, or persons holding thereunder, at least where the real property is held in fee . . . ." 28A C.J.S. *Easements* § 18 at 197 (1996).

*Union Mill & Min. Co. v. Ferris et al.*, 24 F. Cas. 594 (C.C.D. Nev. 1872) (No. 14,371), considers the question with respect to a claim of an easement where the party claiming the easement bases its claim upon use during the time that title was in the government. *Union Mill & Min. Co.* involved the prescriptive right to use water in a stream, and the court stated:

> [The] statutes of limitation do not run against the state, so that no use of water while the title to the land is in the government, can avail the defendant, as a foundation of title by prescription, or defeat, or modify the title conveyed to the grantee by his patent.

*Id.* at 595-96.

Similarly, the New Mexico Court of Appeals held that an easement by prescription had not been established where the party claiming an easement by prescription had used the land from 1972 until a patent was issued to a third party in 1985, but had used the land for only a short time while the land was in private ownership. *Herbertson v. Iliff*, 108 N.M. 552, 775 P.2d 754 (N.M. App. 1989). The New Mexico court held that no easement had been established because the adverse use was during the time when the land was owned by the government. We conclude that no use of land while it is owned by the state can be

support for a claim of an easement by prescription, either against the state or against anyone who acquires title from the state.

Kiowa seeks to avoid the effect of these holdings by relying upon *Test v. Reichert*, 144 Neb. 836, 14 N.W.2d 853 (1944). In that case, Test's wife owned land that adjoined land owned by the federal government, and Test planted wheat on 10 acres of the adjoining government land. Test's wife's land was purchased by Reichert, but Reichert refused to buy the crops on the adjoining government land. Over Test's objection, Reichert harvested the 10 acres of wheat on the government land. Test then brought a conversion action to recover the value of the wheat. Reichert defended upon the basis that the law of the United States prohibited the public from acquiring rights to public lands. The court held that the right to a crop which is growing upon unenclosed public land lies in the one who has planted it and looked after it, rather than in one who forcibly takes possession against the will of the planter. In the discussion of the *Test* case, the court quoted 1 Am. Jur. *Adverse Possession* § 104 at 849 (1936): "[O]ne may acquire rights in public lands by adverse occupancy against all third persons, and this is true even though the claimant admits the government's ownership; in other words, the claimant's possession may be adverse without being hostile to the government." If this rule applied to this case, it would give Kiowa an easement across the Nazarians' land. The primary reason that the *Test* case has no application to the case at hand is that in *Test*, neither party traced his rights to the government, whereas in the case at hand, the Nazarians acquired their right to the land from the state.

On a practical level, the state rarely, if ever, uses its school lands itself. Such lands are almost always leased for a period of 12 years. If the *Test* rule were applied to easements, then tenants of school lands could not stop persons who had been crossing the land for more than 10 years from claiming easements. If this rule were applied to the acquisition of an easement across lands that were once public lands, then of course any claim of an easement by prescription that is based upon 10 years of use while the land was owned by the government would be impos-

sible for a new buyer to defend against. No one could purchase that land from the government without the land being subject to the possibility of an easement immediately upon sale. The state's title to its land would be subject to the statute of limitations whenever the state sold or leased its land. Such a rule has no support in the cases and would seriously hamper the state's rights indirectly by injuring those who buy land from it. For these reasons, we affirm the trial court's judgment.

AFFIRMED.