DA 12-0716

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 345

BURCALOW FAMILY, LLC,

      Plaintiff and Appellant,

  v.

THE CORRAL BAR, INC.,

      Defendant, Appellee and Cross-Appellant.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV 10-379B
                Honorable Mike Salvagni, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Michael J. Lilly, Berg, Lilly & Tollefsen, P.C.; Bozeman, Montana

      For Appellee:

          Arthur V. Wittich, Margaret M. Reader, Wittich Law Firm, P.C.; Bozeman, Montana


                             Submitted on Briefs:  September 18, 2013
                                     Decided:  November 14, 2013


Filed:

                             _____
                                         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Appellant Burcalow Family, LLC, (Burcalow) appeals the decision of the Eighteenth Judicial District Court, Gallatin County, that determined that The Corral Bar, Inc. (the Corral) possesses a prescriptive easement over Burcalow property and that entitled the Corral to rescind a license agreement between the parties. The Corral cross-appeals that the District Court has not entered a final judgment. We reverse and remand.

¶2 We address the following issues on appeal:

1. *Whether the Corral possesses a prescriptive easement over Burcalow's property.*

2. *Whether allegedly fraudulent representations by Burcalow's counsel entitled the Corral to rescind the parties' license agreement.*

3. *Whether the November 2, 2012, judgment constituted a final judgment.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 The Corral Bar sits in the Gallatin Canyon along Highway 191 to the south of the popular skiing destination at Big Sky, Montana. The Corral property consists of a bar, restaurant, and motel on 0.563 acres of land. The bar and restaurant have been in operation since the 1940s. The Corral Bar employs between 35 and 40 people. It serves annually approximately 50,000-80,000 patrons.

¶4 The Corral purchased the Corral Bar and motel property in 1988. The property sits contiguous to property formerly owned by the United States Forest Service (Forest Service). In fact, part of the restaurant building, a storage shed, a well and water transmission line, a satellite television system, a propane tank, and a sanitation system consisting of a dosing

2

tank actually sit on property formerly owned by the Forest Service. The Corral obtained a special use permit from the Forest Service to use this land.

¶5    The United States Congress in the 1990s authorized the Forest Service to trade property in the Big Sky area with private property owners. The Forest Service and Big Sky Lumber Company entered into an exchange agreement pursuant to these acts. The Forest Service agreed to trade property that it owned in exchange for land that the Big Sky Lumber Company owned. The Forest Service included in the exchange with Big Sky Lumber Company property that the Corral used pursuant to its special use permit. The Forest Service advised the Corral of the proposed exchange in December 1998. The Forest Service informed the Corral that its special use permit would be terminated as of December 31, 1998.

¶6    Burcalow purchased certain lots in Section 28 and additional adjoining property from the Big Sky Lumber Company on September 1, 1999. This property sits adjacent to the Corral Bar and includes the former Forest Service land that the Corral had been using. After Burcalow's purchase of the land, Larry Burcalow (Larry), an owner of Burcalow, and the Corral discussed the Corral's possible purchase of the property used by the Corral. Larry also had conversations with Devon White (Devon), an owner of the Corral, and Devon's business partner, David House, before September 1, 1999, in which Larry assured the two that the parties could reach an agreement for the purchase of a portion of Section 28 so that the Corral could complete its expansion plans. Larry testified at trial that he told Devon that if Burcalow bought Section 28, he would "make it right" with the Corral.

3

¶7     The parties eventually agreed to a common boundary realignment.  The Corral exchanged the north and south corners of its land for a similar area of Burcalow's land to the west of the Corral's property.  The Corral's property included in this trade to Burcalow enjoyed direct access to Highway 191.  The Corral used the land that it acquired from Burcalow to expand its kitchen.  This exchange did not provide the Corral with sufficient land, however, for its drain field or well.  The Corral nevertheless continued to use the land with its drain field and well.

¶8     Burcalow's counsel wrote to the Corral on July 6, 2004.  Burcalow's counsel informed the Corral that its special use permit had expired on the date that the Forest Service conveyed its interest in the land to a private entity.  As a result, the letter pointed out that the Corral "ha[d] been using the 1.79 acres covered by the special use permit without express authority to do so."

¶9     Burcalow's counsel proposed that the Corral and Burcalow execute an agreement for the Corral's continued use of that 1.79 acres.  The letter warned, however, that the Corral and Burcalow must reach an agreement "or a lawsuit [will be] filed to quiet the title to the property not later than August 15, 2004."  The letter concluded with counsel's assurance that Burcalow was "interested in amicably working out an agreement" for the Corral's continued use of the land in question.  Burcalow's counsel cautioned the Corral that Burcalow "must take legal action by August 15, 2004, to protect its interests in the event an agreement cannot be reached."

4

¶10    The parties signed a license agreement effective August 1, 2004. The Corral agreed to pay Burcalow $250.00 per year beginning on August 1, 2004, for the use of Burcalow's property pursuant to the agreement. The license agreement expired in August 2009. The parties failed to negotiate the Corral's purchase of the land.

¶11    Burcalow filed a suit against the Corral in 2010 in which it alleged claims for trespass and a declaratory judgment. The Corral answered and asserted six counterclaims: prescriptive easement, detrimental reliance, mistake, negligent misrepresentation, fraud, and breach of the covenant of good faith and fair dealing, and requested that the license agreement be rescinded.

¶12    Burcalow filed a motion for separate trials. It requested a bench trial on the equitable claims for declaratory judgment, rescission (i.e. mistake and fraud), estoppel (i.e. detrimental reliance), and prescriptive easement. It requested a jury trial for the remaining legal issues of trespass, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. The District Court granted Burcalow's motion to bifurcate.

¶13    The District Court issued findings of fact, conclusions of law, and an order on October 12, 2012. The District Court determined that the Corral possessed a prescriptive easement over and across Burcalow's property. The District Court also rescinded the license agreement. Thus, the District Court estopped Burcalow from relying upon the license agreement and ordered Burcalow to refund the $1,250.00 in fees that the Corral had paid under the license agreement. The District Court entered a judgment on November 2, 2012, in accordance with its October 12, 2012, order.

¶14 The District Court conducted a hearing on May 1, 2013, to address whether its November 2, 2012, order constituted a final order. The Corral argued that it never had the chance to present its remaining counterclaims to a jury, including its claims for negligent misrepresentation, detrimental reliance, fraud, and breach of the covenant good faith and fair dealing. The District Court disagreed and deemed its November 2, 2012, judgment to be final. In doing so, the District Court implicitly dismissed the Corral's counterclaims.

## STANDARD OF REVIEW

¶15 We review for clear error a district court's findings of fact. *Boyne USA, Inc. v. Spanish Peaks Dev., LLC*, 2013 MT 1, ¶ 28, 368 Mont. 143, 292 P.3d 432. We review for correctness a district court's legal determination. *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶ 21, 368 Mont. 330, 296 P.3d 450.

## DISCUSSION

¶16 *Whether the Corral possesses a prescriptive easement over Burcalow's property.*

¶17 Burcalow argues that the Corral cannot meet the five-year statutory requirement needed to establish a prescriptive easement on Burcalow's property. Burcalow first claims that the Forest Service owned the Burcalow property at the time that the District Court concluded that the Corral's adverse possession began. Burcalow emphasizes that adverse use cannot run against the federal government. Burcalow next maintains that the Corral's use of Burcalow's land cannot be characterized as adverse in light of the mutual agreement by the parties to allow the Corral's use of the land as set forth in the license agreement.

6

¶18    A prescriptive easement claim requires exclusive, continuous, uninterrupted, open, notorious, and adverse use of a piece of property for five years.  Section 70-19-404, MCA; *Brown & Brown of MT, Inc. v. Raty*, 2012 MT 264, ¶ 19, 367 Mont. 67, 289 P.3d 156.  A party cannot obtain title to government property through adverse possession or use under Montana law.  *Davis v. Hall*, 2012 MT 125, ¶ 34, 365 Mont. 216, 280 P.3d 261.  Other jurisdictions routinely have recognized that private entities cannot acquire a right to use property owned by the government via prescription.  *United States v. California*, 332 U.S. 19, 39-40, 67 S. Ct. 1658, 1669 (1947), *superseded on other grounds*, 43 U.S.C. § 1301; *United States v. Osterlund*, 505 F. Supp. 165, 168 (D. Colo. 1981); *State v. Hutchison*, 721 N.W.2d 776, 782 (Iowa 2006).  Courts understand that the federal government lacks the resources to monitor continuously whether people adversely are using its vast land holdings. *Restatement (Third) of Property: Servitudes* § 2.17 cmt. e (2000).

¶19    The District Court determined that the Corral's adverse use began on December 31, 1998, and, as a result, concluded that the Corral had met the five-year statutory requirement for a prescriptive easement.  Thus, the District Court found that the Corral's adverse use ran from December 31, 1998, the date that the Corral's special use permit terminated, until August 1, 2004, the effective date of the license agreement.  The District Court recognized, though, that the Forest Service owned the property in question from December 31, 1998, until August 23, 1999.

¶20    The District Court distinguished *Davis* and other federal and state court decisions in order to determine that the Corral's adverse use started on December 31, 1998.  The District

7

Court acknowledged that a party cannot acquire a prescriptive easement against the federal government. The Court reasoned, however, that the Corral was not seeking to acquire a prescriptive easement against the federal government. The District Court pointed out that the Corral instead asserted a prescriptive easement on Burcalow's *privately* owned land.

¶21 A private party cannot obtain a prescriptive easement against the federal government. *See Davis*, ¶ 34. Accordingly, a private party's adverse use of property cannot begin to run while the federal government owns that property. *See Pines, Inc. v. Bossingham*, 963 P.2d 397, 400 (Idaho App. 1998); *Sandmaier v. Tahoe Dev. Group*, 887 A.2d 517, 518-19 (Me. 2005); *Kiowa Creek Land & Cattle Co. v. Nazarian*, 554 N.W.2d 175, 176-77 (Neb. App. 1996); *Herbertson v. Iliff*, 775 P.2d 754, 756 (N.M. App. 1989). These courts have recognized the inability of the federal government to monitor whether a private party has been using its property without permission. Consequently, to allow a party's adverse use to run against the federal government would create problems if the government ever sold any land. One court opined that it "would be impossible" for a new buyer to defend against a claim of a prescriptive easement on a piece of land formerly owned by the government. *Kiowa Creek*, 554 N.W.2d at 177. "No one could purchase that land from the government without the land being subject to the possibility of an easement immediately upon sale." *Kiowa Creek*, 554 N.W.2d at 177. We agree. The Corral's adverse use of the property in question could not have begun to accrue until the Forest Service conveyed title to the property to a private entity on August 23, 1999.

8

¶22 The Corral argues in the alternative that even if its adverse use did not begin until August 23, 1999, the license agreement effective on August 1, 2004, was invalid. The theory of prescriptive easement requires adverse use. *Brown & Brown*, ¶ 19. A party cannot acquire a prescriptive easement if the owner of the servient estate shows that use had been permissive. *Pederson v. Ziehl*, 2013 MT 306, ¶ 13, 372 Mont. 223, __P.3d___; *Brown & Brown*, ¶ 19. Burcalow permitted the Corral to use its property pursuant to the license agreement. A valid license agreement would establish permissive use and defeat the Corral's claim of adversity. *Pederson*, ¶ 13.

¶23 The District Court invalidated the license agreement due to what it deemed false representations in Burcalow's July 6, 2004, letter. The District Court focused on Burcalow's representations that the Corral had no right to use Burcalow's property. The District Court determined that the Corral *did* have a right to use Burcalow's property due to its possession of a prescriptive easement over the property.

¶24 The Corral lacked a prescriptive easement at the time Burcalow's counsel sent the letter on July 6, 2004. The parties entered into a license agreement effective on August 1, 2004. The five-year statutory period for adverse use would not have passed until August 23, 2004—five years after the Forest Service transferred the property to a private party. Burcalow's counsel sent the letter to the Corral on July 6, 2004. Burcalow's counsel made no false representations under these circumstances.

¶25 Nothing estops Burcalow from relying on the license agreement. The license agreement defeats the Corral's claims of adverse use. *Pederson*, ¶ 13. Burcalow permitted

9

the Corral's use of its land pursuant to the agreement. The Corral cannot demonstrate that it has used Burcalow's property adversely for the requisite five-year period required to establish a prescriptive easement. *Heller v. Gremaux*, 2002 MT 199, ¶ 12, 311 Mont. 178, 53 P.3d 1259. We reverse the District Court's determination that the Corral possesses a prescriptive easement over Burcalow's land.

¶26 *Whether allegedly fraudulent representations by Burcalow's counsel entitled the Corral to rescind the parties' license agreement.*

¶27 Burcalow contends that the District Court improperly rescinded the license agreement, and, as a result, that it should not have to return the Corral's payments made pursuant to the agreement. The District Court found that the elements for fraud, mistake of fact, and mistake of law had all been met. The District Court appears to base this decision largely on the July 6, 2004, letter that Burcalow's counsel sent to the Corral. The District Court focused on Burcalow's counsel's claims that the Corral did not have authority to use Burcalow's property and Burcalow's threatened legal action if the Corral did not enter into a license agreement.

¶28 The Corral must establish nine elements to make out a prima facie case for fraud, including the falsity of a representation relied upon by the hearer to his detriment. *McCulley v. Am. Land Title Co.*, 2013 MT 89, ¶ 32, 396 Mont. 433, 300 P.3d 679. The Corral cannot fulfill the false representation element required to establish a prima facie case for fraud. The letter from Burcalow's counsel's contains no false representations. *McCulley*, ¶ 32. The

10

Corral possessed no prescriptive easement on July 6, 2004. Burcalow's counsel accurately described the Corral's lack of authority to use Burcalow's property.

¶29    Montana law addresses two kinds of mistake—(1) mistake of fact and (2) mistake of law. Section 28-2-408, MCA. A mistake of fact entails, in part, the belief in the present existence of a thing material to the contract that "does not exist or in the past existence of such a thing which has not existed." Section 28-2-409(2), MCA. A mistake of law often arises from "a misapprehension of the law by all parties," in which all parties made "substantially the same mistake as to the law." Section 28-2-410(1), MCA.

¶30    Burcalow's counsel made no mistake of fact when he claimed that the Corral lacked the authority to use Burcalow's property. The Corral did not possess a prescriptive easement in July 2004. For the same reason, the Corral also cannot invoke the mistake of law doctrine. Burcalow's counsel correctly represented the respective legal positions of the parties as of the date of the letter. We reverse the District Court's decision to rescind the license agreement.

¶31    *Whether the November 2, 2012, judgment constituted a final judgment.*

¶32    The Corral argues that the District Court's November 2, 2012, judgment deprived it of a jury trial on its negligent misrepresentation claim. The District Court relied upon what it characterized as the Corral's certification that the case could be concluded in its response to Burcalow's motion for separate trials. The Corral had opposed bifurcation based upon the fact that "the issues in this case are not distinct and separate but have many common facts." The Corral further contended that all of the claims, especially those that are based in fraud,

11

"are so intertwined, the judge in a judge trial would hear similar testimony to the jury in a jury trial."

¶33    The Corral provided three scenarios for the District Court to consider in its response to Burcalow's motion for separate trials. The Corral first posited that the jury could decide that fraud on the part of Burcalow supported a decision to rescind the license agreement and that the Corral possessed a prescriptive easement. The Corral argued that the case would be "over" under that scenario. The District Court indeed deemed the case to be "over" based upon its decision to rescind the license agreement and award a prescriptive easement to the Corral.

¶34    The District Court based its final judgment ruling on its impression that the Corral had woven its counterclaims with its request to rescind the license agreement. The District Court thus reasoned that its decision to rescind the license agreement, as requested by the Corral, had rendered moot the Corral's remaining counterclaims. By the Corral's own representation in its response to Burcalow's motion for separate trials this outcome resolved all disputes and rendered a final judgment. M. R. App. P. 4(1)(a).

¶35    Our decision on appeal, however, upends the finality of the District Court's order. We have reversed the District Court's decision to rescind the license agreement and we have reversed the District Court's award of a prescriptive easement to the Corral. This outcome has resuscitated the Corral's remaining counterclaims. The District Court's entry of a final judgment deprived the Corral of the chance to have a jury resolve its counterclaims. The

District Court must provide the Corral with the opportunity to present its remaining claims to a jury for resolution.

¶36 The Corral's claim for negligent misrepresentation remains unresolved. To establish a negligent misrepresentation claim, the Corral must show that: (1) Burcalow made a representation about a material fact, (2) the representation was untrue, (3) Burcalow did not have any reasonable ground for believing it to be true, (4) Burcalow made the representation with the intent to induce the Corral to rely on it, (5) the Corral was unaware of the falsity of the representation and justifiably relied upon the representation, and (6) the Corral must have sustained damage because of this reliance. *Harpole v. Powell County Title Co.*, 2013 MT 257, ¶ 28, 371 Mont. 543, 309 P.3d 34.

¶37 The Corral alleges in its counterclaim that Burcalow had represented to the Corral numerous times that Burcalow would take care of the Corral and the Corral's business and that Burcalow would sell the property at issue to the Corral at a reasonable price. The District Court discussed in its findings of fact that Larry had assured the Corral that Burcalow and the Corral could reach an agreement for the purchase of a portion of Section 28. Larry testified at trial that he told Devon that he would "make it right" with the Corral if Burcalow bought Section 28.

¶38 The Corral contends that it traded property with Burcalow in 1999 in anticipation of future resolution regarding the disputed property. The Corral further claims to have relied upon Larry's representations when it reconstructed its kitchen and drilled a well on

13

Burcalow's property. These allegations state a claim for negligent misrepresentation. *Harpole*, ¶ 28.

¶39 We remand to the District Court to allow the Corral to proceed with its counterclaim based upon Burcalow's alleged negligent misrepresentations and any other valid claims previously asserted. *See Zavarelli v. Might*, 239 Mont. 120, 125-26, 779 P.2d 489, 493 (1989) (stating, "On remand, the trial court may consider or decide any matters left open by the appellate court, and is free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not presented or settled by such decision."). The same allegations by the Corral that Burcalow promised to sell land to the Corral at a fair price also may support a counterclaim for detrimental reliance if the Corral can demonstrate that Burcalow's alleged promise induced it to take steps to its detriment. The Corral's counterclaim for its alleged breach of the covenant of good faith and fair dealing also flows from this same alleged promise by Burcalow as this notion of good faith underlies every contract. *Phelps v. Frampton*, 2007 MT 263, ¶ 29, 339 Mont. 330, 170 P.3d 474. Finally, the Corral's counterclaim for fraud also stems from its allegation that Burcalow made material representations upon which Burcalow intended from the Corral to rely. *Western Sec. Bank v. Eide Baily LLP*, 2010 MT 291, ¶ 56, 359 Mont. 34, 249 P.3d 35.

¶40 Reversed and remanded for further proceedings in accordance with this opinion.

/S/ BRIAN MORRIS

We concur:

14

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE

Justice Laurie McKinnon, concurring.

¶41 I agree with the Court's analysis and conclusion that a party cannot obtain title to government property through adverse possession or use. The distinction drawn by the District Court that the Corral was not attempting to acquire a prescriptive easement against the federal government, but rather against a private landowner, is inconsistent with this well-established principle. I further agree that, based upon the findings of fact made by the District Court pertaining to fraud in the license agreement, our decision that there was no prescriptive easement requires reversal of the District Court's order rescinding the license agreement. I write separately to highlight procedural problems which I perceive occurred in the District Court and which, as a result, have caused the proceedings before this Court to be similarly difficult to sort through.

¶42 The difficulties appear to have started with the November 17, 2011 Pretrial Order, which identified as an unresolved issue the question as to which of the parties' claims would be decided by the court and which would be decided by a jury. Burcalow had not requested a jury trial on its claims, but the Corral had demanded a jury trial on its counterclaims. In response to the Pretrial Order, Burcalow filed a Motion for Order Resolving Legal Issue Prior to Trial. Burcalow asserted that a jury should resolve all factual issues associated with

15

Burcalow's trespass claim, the Corral's negligent misrepresentation claim, and the Corral's claim for breach of the covenant of good faith and fair dealing. Burcalow further asserted that the court should resolve the Corral's rescission claim and the Corral's prescriptive easement claim. As authority for bifurcating the claims in this manner, Burcalow cited *City of Great Falls v. Forbes*, 2011 MT 12, ¶ 18, 359 Mont. 140, 247 P.3d 1086, which states that "[a] party has a right to a jury trial only on the legal claims even in litigation involving both equitable and legal claims." When the Corral failed to file a response to Burcalow's motion, the District Court granted the motion.

¶43 Bifurcation of the proceedings arose again, this time on the District Court's initiative, during the parties' oral argument on Burcalow's motion for summary judgment. As a result, the parties submitted post-hearing briefs with differing proposals as to how the various claims should be tried. At this point, the various bifurcation scenarios contemplated by the parties were muddled and confusing—both as to the parties' positions as well as the claims being considered on the issue of bifurcation. Burcalow requested, first, a judge trial on the equitable claims, which were identified as Burcalow's claim for declaratory judgment and the Corral's claims for rescission, estoppel, and prescriptive easement. This was to be followed, if necessary, by a jury trial on the legal claims, which were identified as Burcalow's claim of trespass and the Corral's claims for negligent misrepresentation and breach of the covenant of good faith and fair dealing. The Corral, on the other hand, argued that there should be a jury trial on all claims because the issues were so intertwined and there existed the potential for conflicting findings of fact from the judge and the jury. The Corral

16

objected to bifurcation and maintained its right to have all factual issues tried by a jury. *See Gray v. City of Billings*, 213 Mont. 6, 12-14, 689 P.2d 268, 271-72 (1984). At the same time, however, the Corral conceded that the court should make certain initial determinations prior to trial—namely, whether the Corral's use of Burcalow's property while it was owned by the Forest Service could be included within the period of prescriptive use, and what position the parties would be in if the license agreement were to be rescinded.

¶44 It seems that all of the confusion surrounding bifurcation stems from the parties' competing interests in having or not having their claims heard by a jury and a vehicle by which to accomplish that result. I can only assume that Burcalow perceived a judge trial would benefit its interests while the Corral, conversely, desired to have all claims resolved by a jury. In any event, it appears the main concern of counsel and the court regarded the prescriptive easement and the license agreement. While the parties disputed whether a prescriptive easement claim should be decided by a judge or a jury, they both agreed that the ultimate issue needing to be resolved concerned prescriptive use against the Forest Service. This issue very simply could have been decided by the court, as a matter of law and undisputed fact, and the parties then could have proceeded to a jury trial with argument thereafter being made about how to appropriately instruct the jury.

¶45 The District Court granted Burcalow's motions for separate trials pursuant to M. R. Civ. P. 42(b). The case proceeded to a two-day judge trial starting June 5, 2012. Thereafter, the District Court entered findings of fact and conclusions of law. The court determined that the Corral has a prescriptive easement over Burcalow's property, that the

17

parties' license agreement should be rescinded, and that Burcalow should be estopped from relying on the license agreement. The court entered judgment in favor of the Corral on these claims, including an award of damages, on November 2, 2012, but indicated that the case would proceed to trial on the remaining claims. Nevertheless, Burcalow filed a notice of appeal, to which the Corral objected on the ground that it was premature since the District Court had not yet entered a final judgment as to all claims.

¶46    In its May 7, 2013 Decision and Order, the District Court concluded that its November 2, 2012 judgment was a final judgment which conclusively determined the parties' rights and settled all claims. The court reasoned that by declaring a prescriptive easement in favor of the Corral and by rescinding the license agreement, there no longer were any factual or legal grounds supporting the parties' other claims. We have not addressed the propriety of this reasoning; however, given the nature of these proceedings, I agree with our decision finding that the District Court implicitly dismissed the Corral's remaining counterclaims. Opinion, ¶ 34. The District Court conducted a substantive analysis on the election of remedies, drew conclusions regarding the various causes of action set forth in the Corral's counterclaims, and determined that none of the Corral's counterclaims survived. No other conclusion can be drawn from the District Court's action except that the Corral's remaining claims were denied and dismissed.

¶47    We have reaffirmed today that, as a matter of law, a party cannot claim prescriptive use against government-owned property. Opinion, ¶¶ 18, 21. We have also made clear that the Corral has a right to a jury trial on any valid claims previously asserted, other than the

claim of a prescriptive easement and the claim of fraud in the license agreement *based on* representations that there was no prescriptive easement. Opinion, ¶¶ 35, 39. Finally, our finding that the District Court implicitly dismissed the Corral's remaining counterclaims, thereby rendering this matter final for purposes of appeal, is supported by the District Court's May 7, 2013 Decision and Order. Hopefully these proceedings are now on solid footing and may progress forward to a resolution.

¶48    I concur.

/S/ LAURIE McKINNON