JUSTICE MORRIS
delivered the Opinion of the Court.
¶1 Appellant Burcalow Family, LLC, (Burcalow) appeals the decision of the Eighteenth Judicial District Court, Gallatin County, that determined that The Corral Bar, Inc. (the Corral) possesses a prescriptive easement over Burcalow property and that entitled the Corral to rescind a license agreement between the parties. The Corral cross-appeals that the District Court has not entered a final judgment. We reverse and remand.
¶2 We address the following issues on appeal:

1. Whether the Corral possesses a prescriptive easement over Burcalow’s property.

2. Whether allegedly fraudulent representations by Burcalow’s counsel entitled the Corral to rescind the parties’ license agreement.

3. Whether the November 2, 2012, judgment constituted a final judgment.

PROCEDURAL AND FACTUAL BACKGROUND
¶3 The Corral Bar sits in the Gallatin Canyon along Highway 191 to the south of the popular skiing destination at Big Sky, Montana. The Corral property consists of a bar, restaurant, and motel on 0.563 acres of land. The bar and restaurant have been in operation since the 1940s. The Corral Bar employs between 35 and 40 people. It serves annually approximately 50,000-80,000 patrons.
¶4 The Corral purchased the Corral Bar and motel property in 1988. The property sits contiguous to property formerly owned by the United States Forest Service (Forest Service). In fact, part of the restaurant building, a storage shed, a well and water transmission line, a satellite television system, a propane tank, and a sanitation system consisting of a dosing tank actually sit on property formerly owned by the Forest *500 Service. The Corral obtained a special use permit from the Forest Service to use this land.
¶5 The United States Congress in the 1990s authorized the Forest Service to trade property in the Big Sky area with private property owners. The Forest Service and Big Sky Lumber Company entered into an exchange agreement pursuant to these acts. The Forest Service agreed to trade property that it owned in exchange for land that the Big Sky Lumber Company owned. The Forest Service included in the exchange with Big Sky Lumber Company property that the Corral used pursuant to its special use permit. The Forest Service advised the Corral of the proposed exchange in December 1998. The Forest Service informed the Corral that its special use permit would be terminated as of December 31, 1998.
¶6 Burcalow purchased certain lots in Section 28 and additional adjoining property from the Big Sky Lumber Company on September 1,1999. This property sits adjacent to the Corral Bar and includes the former Forest Service land that the Corral had been using. After Burcalow’s purchase of the land, Larry Burcalow (Larry), an owner of Burcalow, and the Corral discussed the Corral’s possible purchase of the property used by the Corral. Larry also had conversations with Devon White (Devon), an owner of the Corral, and Devon’s business partner, David House, before September 1, 1999, in which Larry assured the two that the parties could reach an agreement for the purchase of a portion of Section 28 so that the Corral could complete its expansion plans. Larry testified at trial that he told Devon that if Burcalow bought Section 28, he would “make it right” with the Corral.
¶7 The parties eventually agreed to a common boundary realignment. The Corral exchanged the north and south corners of its land for a similar area of Burcalow’s land to the west of the Corral’s property. The Corral’s property included in this trade to Burcalow enjoyed direct access to Highway 191. The Corral used the land that it acquired from Burcalow to expand its kitchen. This exchange did not provide the Corral with sufficient land, however, for its drain field or well. The Corral nevertheless continued to use the land with its drain field and well.
¶8 Burcalow’s counsel wrote to the Corral on July 6,2004. Burcalow’s counsel informed the Corral that its special use permit had expired on the date that the Forest Service conveyed its interest in the land to a private entity. As a result, the letter pointed out that the Corral “ha[d] been using the 1.79 acres covered by the special use permit without express authority to do so.”
*501 ¶9 Burcalow’s counsel proposed that the Corral and Burcalow execute an agreement for the Corral’s continued use of that 1.79 acres. The letter warned, however, that the Corral and Burcalow must reach an agreement “or a lawsuit [will be] filed to quiet the title to the property not later than August 15, 2004.” The letter concluded with counsel’s assurance that Burcalow was ‘interested in amicably working out an agreement” for the Corral’s continued use of the land in question. Burcalow’s counsel cautioned the Corral that Burcalow “must take legal action by August 15, 2004, to protect its interests in the event an agreement cannot be reached.”
¶10 The parties signed a license agreement effective August 1, 2004. The Corral agreed to pay Burcalow $250.00 per year beginning on August 1, 2004, for the use of Burcalow’s property pursuant to the agreement. The license agreement expired in August 2009. The parties failed to negotiate the Corral’s purchase of the land.
¶11 Burcalow filed a suit against the Corral in 2010 in which it alleged claims for trespass and a declaratory judgment. The Corral answered and asserted six counterclaims: prescriptive easement, detrimental reliance, mistake, negligent misrepresentation, fraud, and breach of the covenant of good faith and fair dealing, and requested that the license agreement be rescinded.
¶12 Burcalow filed a motion for separate trials. It requested a bench trial on the equitable claims for declaratory judgment, rescission (i.e. mistake and fraud), estoppel (i.e. detrimental reliance), and prescriptive easement. It requested a jury trial for the remaining legal issues of trespass, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. The District Court granted Burcalow’s motion to bifurcate.
¶13 The District Court issued findings of fact, conclusions of law, and an order on October 12, 2012. The District Court determined that the Corral possessed a prescriptive easement over and across Burcalow’s property. The District Court also rescinded the license agreement. Thus, the District Court estopped Burcalow from relying upon the license agreement and ordered Burcalow to refund the $1,250.00 in fees that the Corral had paid under the license agreement. The District Court entered a judgment on November 2,2012, in accordance with its October 12, 2012, order.
¶14 The District Court conducted a hearing on May 1,2013, to address whether its November 2, 2012, order constituted a final order. The Corral argued that it never had the chance to present its remaining counterclaims to a jury, including its claims for negligent *502 misrepresentation, detrimental reliance, fraud, and breach of the covenant good faith and fair dealing. The District Court disagreed and deemed its November 2, 2012, judgment to be final. In doing so, the District Court implicitly dismissed the Corral’s counterclaims.
STANDARD OF REVIEW
¶15 We review for clear error a district court’s findings of fact. Boyne USA, Inc. v. Spanish Peaks Dev., LLC, 2013 MT 1, ¶ 28, 368 Mont. 143, 292 P.3d 432. We review for correctness a district court’s legal determination. N. Cheyenne Tribe v. Roman Catholic Church, 2013 MT 24, ¶ 21, 368 Mont. 330, 296 P.3d 450.
DISCUSSION
¶16 Whether the Corral possesses a prescriptive easement over Burcalow’s property.
¶17 Burcalow argues that the Corral cannot meet the five-year statutory requirement needed to establish a prescriptive easement on Burcalow’s property. Burcalow first claims that the Forest Service owned the Burcalow property at the time that the District Court concluded that the Corral’s adverse possession began. Burcalow emphasizes that adverse use cannot run against the federal government. Burcalow next maintains that the Corral’s use of Burcalow’s land cannot be characterized as adverse in light of the mutual agreement by the parties to allow the Corral’s use of the land as set forth in the license agreement.
¶18 A prescriptive easement claim requires exclusive, continuous, uninterrupted, open, notorious, and adverse use of a piece of property for five years. Section 70-19-404, MCA; Brown & Brown of MT, Inc. v. Raty, 2012 MT 264, ¶ 19, 367 Mont. 67, 289 P.3d 156. A party cannot obtain title to government property through adverse possession or use under Montana law. Davis v. Hall, 2012 MT 125, ¶ 34, 365 Mont. 216, 280 P.3d 261. Other jurisdictions routinely have recognized that private entities cannot acquire a right to use property owned by the government via prescription. United States v. California, 332 U.S. 19, 39-40, 67 S. Ct. 1658, 1669 (1947), superseded on other grounds, 43 U.S.C. § 1301; United States v. Osterlund, 505 F. Supp. 165, 168 (D. Colo. 1981); State v. Hutchison, 721 N.W.2d 776, 782 (Iowa 2006). Courts understand that the federal government lacks the resources to monitor continuously whether people adversely are using its vast land holdings. Restatement (Third) of Property: Servitudes §2.17 cmt. e (2000).
*503 ¶ 19 The District Court determined that the Corral’s adverse use began on December 31,1998, and, as a result, concluded that the Corral had met the five-year statutory requirement for a prescriptive easement. Thus, the District Court found that the Corral’s adverse use ran from December 31, 1998, the date that the Corral’s special use permit terminated, until August 1, 2004, the effective date of the license agreement. The District Court recognized, though, that the Forest Service owned the property in question from December 31,1998, until August 23, 1999.
¶20 The District Court distinguished Davis and other federal and state court decisions in order to determine that the Corral’s adverse use started on December 31, 1998. The District Court acknowledged that a party cannot acquire a prescriptive easement against the federal government. The Court reasoned, however, that the Corral was not seeking to acquire a prescriptive easement against the federal government. The District Court pointed out that the Corral instead asserted a prescriptive easement on Burcalow’s privately owned land.
¶21 A private party cannot obtain a prescriptive easement against the federal government. See Davis, ¶ 34. Accordingly, a private party’s adverse use of property cannot begin to run while the federal government owns that property. See Pines, Inc. v. Bossingham, 963 P.2d 397, 400 (Idaho App. 1998); Sandmaier v. Tahoe Dev. Group, 887 A.2d 517, 518-19 (Me. 2005); Kiowa Creek Land & Cattle Co. v. Nazarian, 554 N.W.2d 175, 176-77 (Neb. App. 1996); Herbertson v. Iliff, 775 P.2d 754, 756 (N.M. App. 1989). These courts have recognized the inability of the federal government to monitor whether a private party has been using its property without permission. Consequently, to allow a party’s adverse use to run against the federal government would create problems if the government ever sold any land. One court opined that it “would be impossible” for a new buyer to defend against a claim of a prescriptive easement on a piece of land formerly owned by the government. Kiowa Creek, 554 N.W.2d at 177. ‘No one could purchase that land from the government without the land being subject to the possibility of an easement immediately upon sale.” Kiowa Creek, 554 N.W.2d at 177. We agree. The Corral’s adverse use of the property in question could not have begun to accrue until the Forest Service conveyed title to the property to a private entity on August 23,1999.
¶22 The Corral argues in the alternative that even if its adverse use did not begin until August 23, 1999, the license agreement effective on August 1, 2004, was invalid. The theory of prescriptive *504 easement requires adverse use. Brown & Brown, ¶ 19. A party cannot acquire a prescriptive easement if the owner of the servient estate shows that use had been permissive. Pederson v. Ziehl, 2013 MT 306, ¶ 13, 372 Mont. 223, 307 P.3d 298; Brown & Brown, ¶ 19. Burcalow permitted the Corral to use its property pursuant to the license agreement. A valid license agreement would establish permissive use and defeat the Corral’s claim of adversity. Pederson, ¶ 13.
¶23 The District Court invalidated the license agreement due to what it deemed false representations in Burcalow’s July 6, 2004, letter. The District Court focused on Burcalow’s representations that the Corral had no right to use Burcalow’s property. The District Court determined that the Corral did have a right to use Burcalow’s property due to its possession of a prescriptive easement over the property.
¶24 The Corral lacked a prescriptive easement at the time Burcalow’s counsel sent the letter on July 6, 2004. The parties entered into a license agreement effective on August 1,2004. The five-year statutory period for adverse use would not have passed until August 23, 20044ive years after the Forest Service transferred the property to a private party. Burcalow’s counsel sent the letter to the Corral on July 6,2004. Burcalow’s counsel made no false representations under these circumstances.
¶25 Nothing estops Burcalow from relying on the license agreement. The license agreement defeats the Corral’s claims of adverse use. Pederson, ¶ 13. Burcalow permitted the Corral’s use of its land pursuant to the agreement. The Corral cannot demonstrate that it has used Burcalow’s property adversely for the requisite five-year period required to establish a prescriptive easement. Heller v. Gremaux, 2002 MT 199, ¶ 12, 311 Mont. 178, 53 P.3d 1259. We reverse the District Court’s determination that the Corral possesses a prescriptive easement over Burcalow’s land.
¶26 Whether allegedly fraudulent representations by Burcalow’s counsel entitled the Corral to rescind the parties’ license agreement.
¶27 Burcalow contends that the District Court improperly rescinded the license agreement, and, as a result, that it should not have to return the Corral’s payments made pursuant to the agreement. The District Court found that the elements for fraud, mistake of fact, and mistake of law had all been met. The District Court appears to base this decision largely on the July 6,2004, letter that Burcalow’s counsel sent to the Corral. The District Court focused on Burcalow’s counsel’s claims that the Corral did not have authority to use Burcalow’s property and Burcalow’s threatened legal action if the Corral did not *505 enter into a license agreement.
¶28 The Corral must establish nine elements to make out a prima facie case for fraud, including the falsity of a representation relied upon by the hearer to his detriment. McCulley v. Am. Land Title Co., 2013 MT 89, ¶ 32, 396 Mont. 433, 300 P.3d 679. The Corral cannot fulfill the false representation element required to establish a prima facie case for fraud. The letter from Burcalow’s counsel’s contains no false representations. McCulley, ¶ 32. The Corral possessed no prescriptive easement on July 6, 2004. Burcalow’s counsel accurately described the Corral’s lack of authority to use Burcalow’s property.
¶29 Montana law addresses two kinds of mistake-(l) mistake of fact and (2) mistake of law. Section 28-2-408, MCA. A mistake of fact entails, in part, the belief in the present existence of a thing material to the contract that “does not exist or in the past existence of such a thing which has not existed.” Section 28-2-409(2), MCA. A mistake of law often arises from "a misapprehension of the law by all parties,” in which all parties made “substantially the same mistake as to the law.” Section 28-2-410(1), MCA.
¶30 Burcalow’s counsel made no mistake of fact when he claimed that the Corral lacked the authority to use Burcalow’s property. The Corral did not possess a prescriptive easement in July 2004. For the same reason, the Corral also cannot invoke the mistake of law doctrine. Burcalow’s counsel correctly represented the respective legal positions of the parties as of the date of the letter. We reverse the District Court’s decision to rescind the license agreement.
¶31 Whether the November 2, 2012, judgment constituted a final judgment.
¶32 The Corral argues that the District Court’s November 2, 2012, judgment deprived it of a jury trial on its negligent misrepresentation claim. The District Court relied upon what it characterized as the Corral’s certification that the case could be concluded in its response to Burcalow’s motion for separate trials. The Corral had opposed bifurcation based upon the fact that ‘the issues in this case are not distinct and separate but have many common facts.” The Corral further contended that all of the claims, especially those that are based in fraud, “are so intertwined, the judge in a judge trial would hear similar testimony to the jury in a jury trial.”
¶33 The Corral provided three scenarios for the District Court to consider in its response to Burcalow’s motion for separate trials. The Corral first posited that the jury could decide that fraud on the part of Burcalow supported a decision to rescind the license agreement and *506 that the Corral possessed a prescriptive easement. The Corral argued that the case would be “over” under that scenario. The District Court indeed deemed the case to be “over” based upon its decision to rescind the license agreement and award a prescriptive easement to the Corral.
¶34 The District Court based its final judgment ruling on its impression that the Corral had woven its counterclaims with its request to rescind the license agreement. The District Court thus reasoned that its decision to rescind the license agreement, as requested by the Corral, had rendered moot the Corral’s remaining counterclaims. By the Corral’s own representation in its response to Burcalow’s motion for separate trials this outcome resolved all disputes and rendered a final judgment. M. R. App. P. 4(l)(a).
¶35 Our decision on appeal, however, upends the finality of the District Court’s order. We have reversed the District Court’s decision to rescind the license agreement and we have reversed the District Court’s award of a prescriptive easement to the Corral. This outcome has resuscitated the Corral’s remaining counterclaims. The District Court’s entry of a final judgment deprived the Corral of the chance to have a jury resolve its counterclaims. The District Court must provide the Corral with the opportunity to present its remaining claims to a jury for resolution.
¶36 The Corral’s claim for negligent misrepresentation remains unresolved. To establish a negligent misrepresentation claim, the Corral must show that: (1) Burcalow made a representation about a material fact, (2) the representation was untrue, (3) Burcalow did not have any reasonable ground for believing it to be true, (4) Burcalow made the representation with the intent to induce the Corral to rely on it, (5) the Corral was unaware of the falsity of the representation and justifiably relied upon the representation, and (6) the Corral must have sustained damage because of this reliance. Harpole v. Powell County Title Co., 2013 MT 257, ¶ 28, 371 Mont. 543, 309 P.3d 34.
¶37 The Corral alleges in its counterclaim that Burcalow had represented to the Corral numerous times that Burcalow would take care of the Corral and the Corral’s business and that Burcalow would sell the property at issue to the Corral at a reasonable price. The District Court discussed in its findings of fact that Larry had assured the Corral that Burcalow and the Corral could reach an agreement for the purchase of a portion of Section 28. Larry testified at trial that he told Devon that he would “make it right” with the Corral if Burcalow bought Section 28.
*507 ¶38 The Corral contends that it traded property with Burcalow in 1999 in anticipation of future resolution regarding the disputed property. The Corral further claims to have relied upon Larry’s representations when it reconstructed its kitchen and drilled a well on Burcalow’s property. These allegations state a claim for negligent misrepresentation. Harpole, ¶ 28.
¶39 We remand to the District Court to allow the Corral to proceed with its counterclaim based upon Burcalow’s alleged negligent misrepresentations and any other valid claims previously asserted. See Zavarelli v. Might, 239 Mont. 120, 125-26, 779 P.2d 489, 493 (1989) (stating, “On remand, the trial court may consider or decide any matters left open by the appellate court, and is free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not presented or settléd by such decision.”). The same allegations by the Corral that Burcalow promised to sell land to the Corral at a fair price also may support a counterclaim for detrimental reliance if the Corral can demonstrate that Burcalow’s alleged promise induced it to take steps to its detriment. The Corral’s counterclaim for its alleged breach of the covenant of good faith and fair dealing also flows from this same alleged promise by Burcalow as this notion of good faith underlies every contract. Phelps v. Frampton, 2007 MT 263, ¶ 29, 339 Mont. 330, 170 P.3d 474. Finally, the Corral’s counterclaim for fraud also stems from its allegation that Burcalow made material representations upon which Burcalow intended from the Corral to rely. Western Sec. Bank v. Eide Baily LLP, 2010 MT 291, ¶ 56, 359 Mont. 34, 249 P.3d 35.
¶40 Reversed and remanded for further proceedings in accordance with this opinion.
CHIEF JUSTICE McGRATH, JUSTICES WHEAT, COTTER, BAKER, McKINNON and RICE concur.