FILED

11/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0360

DA 21-0360

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 227

ELGIN FABER and COLLEEN FABER,

      Plaintiffs, Appellants,
      and Cross-Appellees,

  v.

KEITH RATY, COLLEEN RATY, et al,

      Defendants, Appellees,
      and Cross-Appellants.

APPEAL FROM:   District Court of the Twelfth Judicial District,
                  In and For the County of Hill, Cause No. 16-003
                  Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           Michael F. McGuinness, Patten, Peterman, Bekkedahl & Green,
           PLLC, Billings, Montana

      For Appellees:

           Gregory J. Hatley, Davis, Hatley, Haffeman & Tighe, P.C., Great
           Falls, Montana

Submitted on Briefs:  August 24, 2022

Decided:  November 28, 2023

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Plaintiffs Elgin and Colleen Faber ("the Fabers") appeal the Hill County District Court's Amended Findings of Fact, Conclusions of Law, and Judgment granting prescriptive easements over two roadways to Defendants Keith and Colleen Raty ("the Ratys"). The Ratys cross-appeal the District Court's Judgment regarding the scope of the easements. We reframe the parties' issues on appeal and address:

> *Issue One: Whether the District Court erred by concluding the Ratys acquired a prescriptive easement over each road that survived the grazing lease agreements.*
>
> *Issue Two: Whether the District Court erred in concluding the prescriptive easement over Olson Road was appurtenant.*
>
> *Issue Three: Whether the District Court properly set forth the scope of the Ratys' prescriptive easement over Olson Road.*

¶2     We affirm in part, reverse in part, and remand for modification of the Amended Findings of Fact, Conclusions of Law, and Judgment consistent with this opinion.[1]

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     This case involves the creation of two prescriptive easements in favor of the Ratys over two roads crossing property owned by the Fabers. The Ratys own two parcels of land known as the Upper Setty Ranch and Lower Setty Ranch (collectively, "the Ranches").

---

[1] The Fabers filed a Motion to Strike Portions of the Ratys' Reply Brief in Support of Cross Appeal, asserting that the Ratys' Reply Brief in Support of Cross Appeal includes argument of issues not confined to the Ratys' Answer and Cross Appeal Brief. After reviewing the Ratys' Answer and Cross Appeal Brief, the Fabers' Reply and Cross-Appeal Response Brief, and the Ratys' Reply Brief in Support of Cross Appeal, we determine that the Ratys' Reply Brief in Support of Cross Appeal complied with M. R. App. P. 12(3).

The Lower Setty Ranch is located northeast of the Upper Setty Ranch. Both parcels were originally homesteaded by Ova and Lacrettia Setty in the early 1900s. In 1948, the properties were purchased together by Colleen Raty's grandfather, Steve Boyce. Colleen Raty's father, Bud Boyce, purchased both properties from his father in 1963. The Ratys bought the Lower Setty Ranch and part of the Upper Setty Ranch in 1997, before purchasing the rest of the Upper Setty Ranch in 2004. The Settys, Boyces, and Ratys have ranched and resided on both properties periodically for nearly a century. The Lower Setty Ranch now serves as the headquarters of the Ratys' cattle operation.

¶4 The Faber Property was purchased by Nicholas Faber in 1892. Paul and Alvina Faber acquired the Property in 1948. James Faber acquired the Property in 1993 and conveyed it to the James Faber Living Trust ("the Trust"). Elgin and Colleen Faber succeeded in interest to the Faber Property in 2012.

¶5 Beginning in 1997, the Ratys acquired permits to graze cattle each fall in an area known as Beaver Creek Park. Beaver Creek Park is located southwest of the Lower Setty Ranch. The Upper Setty Ranch, the Lower Setty Ranch, and Beaver Creek Park are each separated by multiple properties which are owned and operated by other parties. The Faber Property sits between all three parcels of land used by the Ratys for cattle grazing. Defendant's Trial Exhibit No. 501, a stipulated map of the subject properties, is included for reference on the following page.



DEFENDANTS' TRIAL
EXHIBIT NO. 501 - 1 OF 1

Raty Ranch
Headquarters
(Lower Setty
Ranch)

Beaver Creek Park

Quarter Gulch
Road

Olson Road

Grobofsky
Property

Faber Property

<----Established Prescriptive Easement

State
Land

★ = Ranch Headquarters

= Access Road/ Easement

Brown
& Brown
Property

<----Established Prescriptive Easement

Upper Setty Ranch

Reservation

↑ Reservation Lease

26

**Grazing Leases**

¶6      From 1997 to 2012, the Ratys leased two tracts of the Faber Property from the Trust for the purpose of cattle grazing in three successive agreements ("the Leases"). The Leases divided the defined portions of the Faber Property that the Ratys were leasing into the "primary summer grazing lease" ("Tract 1") and a "supplemental fall grazing lease" ("Tract 2"). All three of the Leases required the Ratys to "use good stewardship practices to avoid damaging the land" and the latter two noted the "[g]razing history puts the stocking rate at 85 to 100 pair." The Ratys moved their cattle to Tract 2 each fall after the Fabers had put up their hay. The Ratys removed the cattle from the Faber Property in approximately December of each year.

¶7      The portions of the Faber Property leased to the Ratys encompass three roads: (1) Sucker Creek Road; (2) Olson Road; and (3) Quarter Gulch Road. Sucker Creek Road enters the Faber Property from the east. Olson Road diverges from Sucker Creek Road on the Faber Property, runs north to south from the divergent point, and exits the Faber Property to the south. Olson Road then runs through State land and other private properties before entering the Upper Setty Ranch. Quarter Gulch Road diverges from Olson Road on the Faber Property and runs generally east to west, before exiting the Faber Property to the west.

¶8      While the portions of the Faber Property leased to the Ratys encompass the disputed roads at issue, the Leases themselves contain only two references to any road. The 1997 lease states:

27

The lessee is given the right to regulate hunting use due to the presence of cattle and weather conditions on said grazing lands. All hunter motorized traffic shall be restricted to the main road.

All of the Leases state:

This lease is subject to all easements, restrictions, reservations of record and all the easement rights of way apparent from a visual examination of the premises.

¶9 The 1997 lease called for a rate based on the number of grazing cow-calf pairs and single animals. The lease specified the parties were to agree annually on an amount of money per cow-calf pair or single animal. The lease further stated, "[t]he lessee agrees to use the area only for surface grazing." The 2002 lease abandoned the cash-per-cow payment method in favor of a flat rate. Keith Raty explained at trial that the parties transitioned to the flat rate because "it was a headache to keep track of every animal on the property and how long they were there. Jim [Faber] and I out of convenience just came up with a flat rate."

¶10 The Fabers acquired the Faber Property from the Trust in September 2012, approximately three months prior to the expiration of the third and final lease. The dispute between the Ratys and the Fabers arises from the Ratys' use of: (1) Olson Road as they move cattle between Upper Setty Ranch and Lower Setty Ranch; and (2) Quarter Gulch Road as they move cattle between Lower Setty Ranch and Beaver Creek Park.

**Olson Road**

¶11 The Ratys and their predecessors have used Olson Road to trail cattle between the Ranches since the homestead days. When Bud Boyce moved his residence onto Lower Setty Ranch to assist with his father's cattle operation in 1955, this use had already been

28

established. In the 1970s, Bud moved his residence from the Lower Setty Ranch to a separate property he owned nearby. When he moved, Bud hired someone to live on the Lower Setty Ranch to assist with cattle operations by, among other things, trailing cattle between the Ranches. In 1982, Bud moved his residence back to the Lower Setty Ranch and continued to use Olson Road to move cattle between the Ranches. Between Bud's 1963 purchase of the ranches and the 1997 sale to the Ratys, this process of trailing cattle between the Ranches on Olson Road occurred each spring and multiple autumns. The use continued throughout the existence of the Leases.

**Quarter Gulch Road**

¶12 Neither the Ratys nor their predecessors used Quarter Gulch Road prior to 1997. Beginning in 1997, the Ratys used Quarter Gulch Road to trail cattle both from Lower Setty Ranch to Beaver Creek Park and from Tract 1 to Tract 2 each autumn. The portion of Quarter Gulch Road used by the Ratys is predominately, if not entirely, within Tract 2. Keith Raty testified that the Ratys typically moved 400 to 500 cow-calf pairs to Beaver Creek Park through Tract 2 using Quarter Gulch Road in addition to grazing cattle pursuant to the Leases, far higher than the historic stocking rate of 85 to 100 pairs. The Fabers did not give the Ratys permission to trail cattle between the Lower Setty Ranch and Beaver Creek Park using Quarter Gulch Road each fall.

¶13 The 2007 lease extension ended by its own terms in 2012. On January 7, 2016, the Fabers commenced the quiet title action underlying this appeal. After a two-day bench trial, the District Court issued its Findings of Fact, Conclusions of Law, and Judgment. It determined the Ratys have a prescriptive easement to use Olson Road to cross the Faber

29

Property. The District Court determined the Ratys' right to use Olson Road pursuant to the prescriptive easement included access to agricultural, recreational, and residential activities on the Upper Setty Ranch consistent with historical uses. After the Ratys moved the District Court to amend its judgment and clarify the scope of their prescriptive rights, the court clarified these activities included trailing up to 300 cow-calf pairs between the Ranches along Olson Road, as opposed to just 200 pairs. Further, the District Court concluded the Ratys established a prescriptive easement to use Quarter Gulch Road to trail approximately 400 to 500 cow-calf pairs across the Faber Property between the Lower Setty Ranch and Beaver Creek Park. Both easements were limited in width to approximately thirty feet in each direction from the center line of the roads.

**STANDARDS OF REVIEW**

¶14 "When a district court sits without a jury, we review the court's findings of fact for clear error and its conclusions of law for correctness." *Truss Works, Inc. v. Oswood Construction Co.*, 2022 MT 42, ¶ 7, 408 Mont. 27, 504 P.3d 1116 (citation omitted). "A finding of fact may be clearly erroneous if it is not supported by substantial evidence in the record; if the district court misapprehended the evidence; or when our review of the record leaves this Court with the definite and firm conviction that a mistake has been made." *Lyndes v. Green*, 2014 MT 110, ¶ 14, 374 Mont. 510, 325 P.3d 1225 (citation omitted).

¶15 "The district court is in the best position to observe and determine the credibility of witnesses and we will not second guess its determination regarding the strength and weight of conflicting testimony." *Lyndes*, ¶ 15 (citations omitted). "On appeal, when determining whether the trial court's findings are supported by substantial credible evidence, we will

30

view the district court's findings of fact in the light most favorable to the prevailing party." *Lyndes*, ¶ 15 (citation omitted). "The district court's findings will be upheld even if the evidence could have supported different findings." *Lyndes*, ¶ 15 (citation omitted).

¶16 We review mixed questions of law and fact de novo. *Duffy v. State*, 2005 MT 228, ¶ 10, 328 Mont. 369, 120 P.3d 398 (citation omitted). "Mixed questions of law and fact are presented to this Court when the historical facts of a case are admitted or established, the applicable law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Stop Over Spending Montana v. State*, 2006 MT 178, ¶ 10, 333 Mont. 42, 139 P.3d 788 (citations omitted).

### DISCUSSION

*Issue One: Whether the District Court erred by concluding the Ratys acquired prescriptive easements over each road that survived the grazing lease agreements.*

¶17 The Fabers argue the Ratys failed to meet their burden in the instant case[2] to prove the use of the roads was open, notorious, and adverse to the property rights of the Faber Property owners.[3] The Fabers assert the Ratys did not prove they used the roads under a claim of right, rather than under the purported custom of neighborly accommodation, and that the District Court erred in shifting the burden to the Fabers to prove permissive use. The Fabers argue the Leases and testimony regarding the neighborly accommodation prove

---

[2] The Fabers argue that instead of relying on the evidence presented at trial, the District Court impermissibly relied on the facts established in *Brown & Brown of MT, Inc. v. Raty*, 2012 MT 264, 367 Mont. 67, 289 P.3d 156 (*Brown & Brown I*), even though the Fabers were not a party to that prior litigation. We have confined our review to the facts and evidence in this case.

[3] The Fabers raise no arguments regarding the elements of exclusive, continuous, or uninterrupted use of either road. We accordingly decline to address these elements.

31

the use of the roads was permissive. Finally, the Fabers argue the Leases extinguished the claim of easement by prescription because paying for the use of the Faber Property was inconsistent with the easement claim.

¶18 The Ratys counter, arguing the evidence at trial established the historic use of each road was under a claim of right. They assert that evidence of the nature and extent of the use of each road was sufficient to prove that use was open and notorious. The Ratys also argue the Fabers failed to rebut the presumption of adverse use by proving the use was permissive or under neighborly custom, and that the grazing leases did not extinguish the existing prescriptive easement on Olson Road or prevent the creation of an easement over Quarter Gulch Road. We address the arguments as they pertain to each respective road separately.

¶19 A party seeking to establish an easement by prescription "must show open, notorious, exclusive, adverse, continuous, and uninterrupted use over the five-year statutory period by clear and convincing evidence." *Brown & Brown I*, ¶ 19 (citation omitted). We have defined "clear and convincing evidence" in the context of a prescriptive easement as:

> [A] requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure—that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

*Wareing v. Schreckendgust*, 280 Mont. 196, 206, 930 P.2d 37, 43 (1996) (quoting *In re J.L.*, 277 Mont. 284, 289, 922 P.2d 459, 462 (1996)).

32

¶20    Use of property is "open and notorious" when the use constitutes a distinct and positive assertion of a right hostile to the rights of the owner and is brought to the attention of the owner. *Clark v. Heirs and Devisees of Dwyer*, 2007 MT 237, ¶ 25, 339 Mont. 197, 170 P.3d 927 (citations omitted). "Open and notorious use can be established by showing that the condition of use was so obvious that the owner was not deceived and should have known of the claimant's use." *Albert v. Hastetter*, 2002 MT 123, ¶ 21, 310 Mont. 82, 48 P.3d 749 (citation omitted). Montana law does not require a prescriptive easement claimant to verbally communicate a hostile intent. *Albert*, ¶ 28 (citations omitted). "To be 'open and notorious,' roadway use must give the landowner actual knowledge of the claimed right, or be of such a character as to raise a presumption of notice." *Albert*, ¶ 21 (citations omitted).

¶21    To establish the element of adverse use, "the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the landowner, and such claim must be known to and acquiesced in by the landowner." *Brown & Brown I*, ¶ 20 (citations omitted). Acquiescence is distinguishable from permission. *Brown & Brown I*, ¶ 20 (citation omitted). We have explained the distinction between acquiescence and permission:

> "Acquiescence," regardless of what it might mean otherwise, means, when used in this connection, passive conduct on the part of the owner of the servient estate consisting of failure on his part to assert his paramount rights against the invasion thereof by the adverse user. "Permission" means more than mere acquiescence; it denotes a grant of a permission in fact or a license.

*Brown & Brown I*, ¶ 20 (quoting *Cremer v. Cremer Rodeo Land & Livestock Co.*, 192 Mont. 208, 212, 627 P.2d 1199, 1201 (1981)).

33

¶22    Montana law has long followed the rule that open, notorious, continuous, uninterrupted, and exclusive use raises a presumption that the use was also adverse. *Renner v. Nemitz*, 2001 MT 202, ¶ 13, 306 Mont. 292, 33 P.3d 255; *Wareing*, 280 Mont. at 209, 930 P.2d at 45; *Warnack v. Coneen Family Trust*, 278 Mont. 80, 83, 923 P.2d 1087, 1089 (1996); *Lemont Land Corp. v. Rogers*, 269 Mont. 180, 185, 887 P.2d 724, 727-28 (1994); *Mountain View Cemetery v. Granger*, 175 Mont. 351, 356, 574 P.2d 254, 257 (1978); *Glantz v. Gabel*, 66 Mont. 134, 141, 212 P. 858, 860 (1923).   Once this presumption arises, "the burden shifts to the landowner affected by the prescriptive claim to establish that the claimant's use was permissive." *Brown & Brown I*, ¶ 19 (citations omitted).   "Because the theory of prescriptive easement is based on adverse use, if the owner of the servient estate shows that use was permissive, no such easement can be acquired." *Leisz v. Avista Corp.*, 2007 MT 347, ¶ 17, 340 Mont. 294, 174 P.3d 481 (citation omitted).

¶23    "[N]eighborly accommodation is a form of permissive use which, by custom, does not require permission at every passing." *Heller v. Gremaux*, 2002 MT 199, ¶ 14, 311 Mont. 178, 53 P.3d 1259 (internal quotation and citations omitted).  "[U]se of a neighbor's land based upon mere neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement." *Heller*, ¶ 14 (citation omitted).

¶24    An existing prescriptive easement may be extinguished under § 70-17-111(1)(c), MCA, which allows for a servitude to cease "by the performance of any act upon either tenement by the owner of the servitude or with the owner's assent that is incompatible with its nature or exercise."   Thus, "if a prescriptive easement exists, subsequent acts

34

inconsistent with the claim by prescription[] support the conclusion that the prescriptive easement has been extinguished." *Letica Land Co, LLC v. Anaconda-Deer Lodge Cty.*, 2015 MT 323, ¶ 35, 381 Mont. 389, 362 P.3d 614 (quoting *Pub. Lands Access Ass'n, Inc. v. Boone & Crockett Club Found., Inc.*, 259 Mont. 279, 290, 856 P.2d 525, 532 (1993)).

**Olson Road**

¶25 Based on evidence submitted by the parties and testimony at trial, the District Court found the Fabers and their predecessors were aware the Ratys and their predecessors used Olson Road to access the Upper Setty Ranch and that this use was under a claim of right. The District Court found that "[i]t did not even occur to [the Ratys] that they might need permission. They never considered it." The District Court also found that "[t]he Fabers and their predecessors never granted the Ratys or their predecessors permission or any license to use the Olson Road" for access to the Upper Setty Ranch. We see no clear error in these findings.

¶26 Jim Faber testified that Bud Boyce did not need permission to trail cattle on Olson Road. Jim explained that Bud would often notify him in advance and Jim would help by taking his dog home to prevent interference with the trailing of cattle. Bud and the Ratys corroborated this testimony, stating that they never asked for permission from Jim, who never required or granted it. While other neighboring ranchers testified that the neighbors were friendly and cooperative, they also explained that if a neighbor needed to cross another's property to reach their own property, they had a right to go without being stopped.

¶27 The Fabers point to conflicting testimony in an effort to characterize other evidence such as the Leases as invariably supporting factual findings contrary to the District Court's

35

findings. But "this Court will not second-guess the trial court's determinations as to the strength and weight of conflicting testimony." *Meine v. Hren Ranches, Inc.*, 2015 MT 21, ¶ 20, 378 Mont. 100, 342 P.3d 22 (citations omitted). Substantial evidence exists to support the District Court's factual findings in this regard.

¶28 The District Court based its determination that neighborly accommodation did not defeat the Ratys' claimed easement in part on our holding in *Lyndes*. In *Lyndes*, we upheld the district court's conclusion that a prescriptive easement was not defeated by evidence of a custom of neighborly accommodation where the use of the land "began with a claim of right that the neighbors did not contest." *Lyndes*, ¶ 20. Based on the record in this case and our holding in *Lyndes*, we agree with the District Court's conclusion that the Ratys and their predecessors established prescriptive rights over Olson Road.

¶29 The Fabers rely on the existence of the Leases between 1997 and 2012, arguing: (1) that the Leases conclusively rebut any actual or presumed adversity, thus defeating the Ratys' prescriptive easement claim; or (2) that by paying to use the Faber Property in the Leases, any existing easement claim was subsequently extinguished under our interpretation of § 70-17-111(1)(c), MCA, in *Letica*.

¶30 The fundamental infirmity of the Fabers' first argument regarding the impact of the Leases on the Ratys' prescriptive easement is that the easement over Olson Road existed for decades before the Leases were in effect. The Fabers' second argument likewise fails because of the explicit language of the Leases. In rejecting this second argument, the District Court concluded the Ratys "entered the leases to get the grazing rights, not because they doubted their existing right to use the road," and "accordingly [the Leases] do not

36

extinguish the prescriptive easement" under § 70-17-111(1)(c), MCA.  Supporting this conclusion, each iteration of the Leases contained language stating, "the lessee agrees to use the area *only for surface grazing*."  (Emphasis added.)  Each iteration also contains a clause stating, "[t]his lease is subject to all easements, restrictions, reservations of record and all easement rights of way apparent from a visual examination of the premises."

¶31     We find no clear error in the District Court's factual findings regarding the historical uses of Olson Road by the Ratys and their predecessors.  We find no clear error in the District Court's finding that the Ratys and their predecessors used Olson Road under a claim of right, as opposed to a custom of neighborly accommodation or permissive use.  The District Court did not err by holding: (1) the Ratys have a prescriptive easement to use Olson Road to access the Upper Setty Ranch for agricultural, recreational, and residential purposes; and (2) the prescriptive easement was not extinguished by the Leases.

### Quarter Gulch Road

¶32     In addition to the general arguments noted above, the Fabers assert specifically that the Ratys failed to show the use of Quarter Gulch Road was open, notorious, and adverse because paying for the use of the property encompassing Quarter Gulch Road negates any finding of use under a claim of right or adequate notice to the Fabers.  The Fabers rely on *Burcalow Family, LLC v. Corral Bar, Inc.*, 2013 MT 345, 372 Mont. 498, 313 P.3d 182, in which we held the proponent of a prescriptive easement could not prove adversity when the proponent had been using the land pursuant to a license agreement.  The Ratys respond that their use of Quarter Gulch Road was so far beyond the terms of the Leases that it

37

supports a finding of at least constructive notice and a presumption of adverse use, and *Burcalow* is thus distinguishable.

¶33 The District Court found that neither the Ratys nor their predecessors used Quarter Gulch Road at all before 1997, when the Leases began. The District Court expressed concern regarding the overlap of the Leases and the alleged prescriptive period, but nevertheless concluded the Ratys had established prescriptive rights over Quarter Gulch Road because the Ratys "adversely moved 300 to 400 more cow-calf pairs than the leases permitted up and down the Quarter Gulch Road." The District Court explained that the movement of several hundred more head of cattle than the Leases contemplated, in concert with the significant presence of humans, vehicles, and manure piles was sufficient to establish adverse, open, and notorious use for the requisite time. Finally, the District Court interpreted our holdings in *Brown & Brown I*, *Cremer*, and *Lyndes* to "effectively charge[] the Fabers with a legal duty of vigilance to see what the Ratys were doing, realize the leases did not permit it, and conclude this use of the Quarter Gulch Road was adverse."

¶34 The District Court's conclusion regarding Quarter Gulch Road overlooks one key fact regarding the Leases. The undisputed evidence at trial shows the 2002 lease replaced the 1997 cost method based on the number of cattle, instead choosing a flat rate because, as Keith Raty testified, "it was a headache to keep track of every animal on the property and how long they were there. Jim [Faber] and I out of convenience just came up with a flat rate." The 1997 lease was in effect from June 22, 1997, to May 28, 2002, when the second lease supplanted the first: a period of less than five years.

38

¶35    Moreover, the record establishes the Ratys' use of Quarter Gulch Road began with the leases; Quarter Gulch Road is mostly, if not entirely, within the area encompassed by the Leases; and the movement of cattle at issue occurred during the time of year the cattle would be on the leased tract of land. Even assuming any such "duty of vigilance" exists, the testimony by Keith Raty and the explicit terms of the Leases demonstrate that Jim Faber sought to discharge that duty before the requisite five-year prescriptive period was exhausted. The Fabers also correctly point out that the Leases do not place a clear limit on the number of cattle or the nature and frequency of access to the grazing cattle. Because the Ratys cannot establish that their use of Quarter Gulch Road was open and notorious, their claimed prescriptive easement over the road fails, and we need not address the impact of the lease on the element of adversity.

¶36    The District Court's finding that the Ratys, starting in 1997, established open and notorious use of Quarter Gulch Road for the requisite prescriptive period of five years was clearly erroneous, and its conclusion that the Ratys satisfied the statutory criteria for establishing prescriptive rights was incorrect. We reverse its grant of a prescriptive easement over Quarter Gulch Road.

> *Issue Two: Whether the District Court erred in concluding the prescriptive easement over Olson Road was appurtenant.*

¶37    The Fabers argue that Bud Boyce's prescriptive right to use Olson Road was in gross because it only benefitted Bud personally rather than in connection with his ownership or use of the Ranches. The Fabers assert the District Court erred in concluding that the

39

prescriptive easement was appurtenant, and therefore the prescriptive easement rights did not pass to the Ratys when they purchased the Ranches.

¶38 The Ratys argue the District Court was correct in concluding that the Ranches constitute the dominant tenement and that the Fabers have failed to rebut the presumption of appurtenance under our existing case law.

¶39 "An easement appurtenant attaches to, passes with, and is incident of ownership of the particular land to which it is appurtenant." *Clark*, ¶ 25 (citation omitted). The burden or benefit of an easement appurtenant therefore passes automatically to successors. *Clark*, ¶ 25 (citation omitted). We have explained the difference between an easement appurtenant and an easement in gross:

> An easement appurtenant is an easement that burdens one parcel of land for the benefit of another parcel of land; in other words, the easement serves the owner of the benefitted parcel and passes with the title to that land. The benefited parcel is known as the dominant estate, and the burdened parcel is termed the servient estate. An easement appurtenant must have both a dominant estate and a servient estate. In contrast, an easement in gross benefits the holder of the easement personally, not in connection with his or her ownership or use of a particular parcel of land. Thus, with an easement in gross, no dominant estate (benefitted parcel) exists and the easement right cannot pass with the title to any land.

*Meine*, ¶ 22 (internal citations omitted).

¶40 At the outset, we presume that a prescriptive easement is appurtenant. *Slauson v. Marozzo Plumbing & Heating*, 2009 MT 333, ¶ 17, 353 Mont. 75, 219 P.3d 509 (citing *Broadwater Dev., LLC v. Nelson*, 2009 MT 317, ¶ 34, 352 Mont. 401, 219 P.3d 492). Because a prescriptive easement, unlike an express easement, is created by operation of law instead of a granting instrument, "we must look instead to the situation of the properties

40

involved, the purpose to be accomplished by the easement, and the nature of the enjoyment by which it was acquired." *Slauson*, ¶ 17 (citations omitted). "The fact that the easement benefits the owner of a particular tract, adds to the enjoyment of another parcel, or is of no value unless used in connection with particular land suggests appurtenance." *Slauson*, ¶ 17 (citing *Broadwater Dev.*, ¶ 34).

¶41 The District Court concluded that the prescriptive rights over Olson Road were appurtenant to the Ratys' ownership of the Upper and Lower Setty Ranches, explaining:

> Though there is evidence of Bud Boyce incidentally and occasionally moving cattle through the Upper Setty Ranch to his other properties in the area (after using the Olson Road to bring them across the Faber property to get them to the Upper Setty Ranch), and vice versa, this evidence of sporadic use to get to and from his other property does not establish that some parcel other than the Upper Setty Ranch and the Lower Setty Ranch was the dominant estate.

¶42 As the District Court did, we begin with the presumption that the easement over Olson Road is appurtenant. *Slauson*, ¶ 17 (citation omitted). We then turn "to the situation of the properties involved, the purpose to be accomplished by the easement, and the nature of the enjoyment by which it was acquired." *Slauson*, ¶ 17 (citation omitted).

¶43 The record below demonstrates that the Upper and Lower Setty Ranches have passed through the chain of custody together, apart from the period between 1997 and 2004 when Bud retained a partial stake in the Upper Setty Ranch. The record further demonstrates the properties have been ranched together across at least three generations of Boyces and Ratys. Testimony established that when Bud temporarily moved off the Lower Setty Ranch in the 1970s, he hired someone to live there in his stead and continue to, among other duties, trail cattle along Olson Road between the Ranches. When Keith Raty joined

41

the cattle operation in 1987, ranching the properties together was the norm, and it remains so today. This evidence strongly suggests appurtenance.

¶44    We also consider that evidence "the easement benefits the owner of a particular tract, adds to the enjoyment of another parcel, or is of no value unless used in connection with particular land suggests appurtenance." *Slauson*, ¶ 17 (citing *Broadwater Dev.*, ¶ 34). The District Court found that the easement benefitted the Ranches and burdened the Faber Property to allow access between the Ranches for agricultural, recreational, and residential uses. An easement to use a road to trail cattle between a cattle operation's traditional seasonal grazing locations is of no value unless it is used in connection with both parcels. The fact that the easement was of no value unless used in connection with the Ranches further supports a conclusion that the prescriptive easement is appurtenant to the Ranches.

¶45    Substantial evidence supported the District Court's underlying factual findings and the District Court correctly concluded that the prescriptive rights over Olson Road were appurtenant to ownership of the Ranches.

> *Issue Three: Whether the District Court failed to set forth the proper scope of the Ratys' prescriptive easement over Olson Road.*

¶46    The Fabers argue the District Court erred in concluding the prescriptive easement over Olson Road included the right to trail approximately 300 cow-calf pairs between the Ranches, instead of 200. The Fabers base this argument on testimony at trial establishing the Ratys expanded their use of Olson Road from 200 to 300 pairs starting in 1997, which coincides with the start of the Leases. The Ratys assert the District Court correctly

concluded the prescriptive period did not end just because the first lease went into effect in 1997.

¶47 The Ratys cross-appeal, arguing the District Court failed to include their historical practice of resting their cattle on the Faber Property while trailing cattle between the Ranches.

¶48 "[I]n acquiring a prescriptive easement, the right of the owner of the dominant estate is governed by the character and extent of the use during the period requisite to acquire it." *Clark*, ¶ 26 (internal quotations and citations omitted); *see also* § 70-17-106(1), MCA. Successors in interest "may demonstrate a prescriptive easement either by evidence that the prescriptive easement already existed at the time of transfer, or through the doctrine of tacking." *Meine*, ¶ 37 (citation omitted). "The doctrine of tacking involves the joining of consecutive periods of possession by different persons to treat the periods as one continuous period; esp., the adding of one's own period of land possession to that of a prior possessor to establish continuous adverse possession for the statutory period." *Meine*, ¶ 37 (internal quotations and citations omitted).

¶49 The scope of the Ratys' easement over Olson Road, specifically the quantity of cattle, depends on when the prescriptive period ended. As explained above regarding the purported easement over Quarter Gulch Road, the explicit terms of the Leases negate any finding of open and notorious use *during the pendency of the Leases* because: (1) the Leases do not place a rigid limit on the number of cattle on the property or the nature and frequency of access to the livestock; and (2) Jim Faber and Keith Raty changed the terms of the contract to a flat rate to alleviate the burden of counting cattle. (Emphasis added.) Thus,

43

while the Leases did not extinguish the existing prescriptive easement over Olson Road, they certainly confined the prescriptive period to the time before the Leases were in effect.

¶50    Applying this reasoning to the District Court's otherwise well-supported factual findings regarding the historical use of Olson Road between 1948[4] and 1997, the Ratys' easement is properly limited to trailing approximately 200 cow-calf pairs, as established by the evidence at trial. Additionally, the doctrine of tacking is inapplicable because the Ratys cannot show open and notorious use beyond 1997.

¶51    As for the Ratys' claim that the District Court erred in failing to include the historical practice of resting their cattle on the Faber Property, our review is precluded because the Ratys did not raise this issue before the District Court. *State v. Longfellow*, 2008 MT 343, ¶ 19, 346 Mont. 286, 194 P.3d 694. Our refusal to consider arguments raised for the first time on appeal stems from our firm conviction that it is "fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider." *State v. Claassen*, 2012 MT 313, ¶ 19, 367 Mont. 478, 291 P.3d 1176 (internal quotations and citations omitted).

¶52    In our review of the record below, we see no reference to the issue of whether the Ratys' historic use of Olson Road included the resting practices as alleged on appeal. While there are a couple of passing references to this practice in testimony, there is nothing to suggest the District Court had the opportunity to consider specifically whether the resting practice was within the scope of the prescriptive easement over Olson Road. The Ratys

---

[4] The District Court found that the use of Olson Road stretched back to "at least" 1948. We use 1948 as the beginning of the prescriptive period for simplicity.

44

sought clarification of the scope of their easement after the District Court's initial judgment on four other specific grounds, leading to the Amended Findings of Fact, Conclusions of Law, and Judgment at issue here. Conspicuously absent from this clarification is any reference to resting cattle.

## CONCLUSION

¶53 We affirm the District Court's conclusion that the Ratys possess a prescriptive easement, appurtenant to ownership of the Ranches, over Olson Road on the Faber Property. We reverse the District Court's conclusion that the Ratys possess a prescriptive easement over Quarter Gulch Road on the Faber Property. We remand to the District Court with instructions to conform the Amended Findings of Fact, Conclusions of Law, and Judgment to reflect our holding that the Ratys' prescriptive easement is limited in scope to the historic agricultural, recreational, and residential uses of the road by the Ratys and their predecessors between approximately 1948 and 1997.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE

45